OPINION OF THE COURT
Meyer, J.
The question presented by this appeal is whether evidentiary privileges prevent disclosure in a wrongful death action concerning the mental condition of the decedent whose unwitnessed death occurred under circumstances consistent with either negligence of the defendant or suicide. We hold that since decedent himself could not have prevented disclosure, his personal representative may not do so in an action brought under EPTL 5-4.1.
Plaintiff is the administratrix of the estate of her husband, Robert Prink, who was an associate of a law firm whose offices were at 30 Rockefeller Plaza in New York City. On March 1, 1976, he was found dead on the sixth floor setback of the building. The window of the 36th floor office Mr. Prink had occupied was open. There were no eyewitnesses, but the deputy chief medical examiner noted on Mr. Prink’s death certificate that Dr. Thomas Doyle, Mr. Prink’s psychiatrist, had reported to him that Mr. Prink had been acutely tense and depressed.
Thereafter plaintiff commenced the present action against defendants, the owners and architects respectively of 30 Rockefeller Center, claiming that negligence in the design and installation of the window alcove desk at which decedent worked and in the maintenance of the window required that he kneel on the desk in order to open the window which was jammed, and that he lost his balance and fell when he attempted to do so. During the examination of plaintiff before trial she admitted that her husband had told her sometime before his death that he was seeing Dr. Doyle, a psychiatrist, but refused on the basis of the spousal privilege to disclose what her husband had said about why he was seeing Dr. Doyle. She also admitted that after her husband’s death she had spoken with Dr. Doyle, but refused to disclose the content *314 of the conversation, claiming privilege.[1] On defendants’ motion for an order compelling plaintiff to testify concerning the content of her conversations with her husband and Dr. Doyle, Special Term ordered the questions answered. The Appellate Division affirmed, but certified to us the question "Was the order of the Supreme Court, as affirmed by this Court, properly made?” We answer the certified question in the affirmative and, therefore, affirm the Appellate Division’s order.
The initial inquiry is whether privilege ever attached. The conversation between Mr. and Mrs. Prink occurred during marriage and was of a nature that it would not have been made but for the confidence induced by the marital relationship. It would, therefore, be within the protection of CPLR 4502 (subd [b]). Less certain is whether Dr. Doyle’s conversation with Mrs. Prink after her husband’s death is privileged for Mrs. Prink did not consult Dr. Doyle as a patient. Mr. Prink did, however, and Dr. Doyle’s information concerning him was, therefore, "acquired in attending a patient in a professional capacity” within the meaning of CPLR 4504 (subd [a]) and for purposes of the present inquiry at least may be presumed to have been "necessary to enable him to act in that capacity” as required by that provision.
Neither the spousal (see Southwick v Southwick, 49 NY 510, 518; Richardson, Evidence [10th ed — Prince], § 455) nor the physician-patient privilege (CPLR 4504, subd [cj; Davis v Supreme Lodge, Knights of Honor, 165 NY 159; 8 Wigmore, Evidence [McNaughton rev], § 2341) is terminated by death alone. Both privileges, therefore, apply unless waived in some manner. To be borne in mind in deciding whether there has been a waiver is that the conjugal privilege belongs not to the witness but to the spouse against whom the testimony is offered (People v McCormack, 278 App Div 191, 194, affd 303 NY 782; see People v Melski, 10 NY2d 78, 80, n 1; Richardson, op. cit, § 453) and that the physician-patient privilege belongs to the patient (CPLR 4504, subd [a]; Richardson, Evidence, § 434). From the latter fact it follows that Dr. Doyle’s voluntary disclosures to the chief medical examiner and to Mrs. Prink after her husband’s death, proper though they undoubt *315 edly were as a matter of professional ethics (see Lanza v New York State Joint Legislative Comm., 3 NY2d 92, 97; 45 NY Jur 371, Physicians & Surgeons, § 119), cannot constitute a waiver making an otherwise privileged statement admissible (see Matter of City Council of City of N. Y. v Goldwater, 284 NY 296; Davis v Supreme Lodge, Knights of Honor, 165 NY 159, supra; People v Harris, 39 Misc 2d 193; Richardson, op. cit., §§ 440, 452; 8 Wigmore, op. cit., § 2381). To hold that a recipient of confidential information by his sole fiat may destroy the privilege would be directly contrary to the salutary purpose for which the privilege was adopted.[2]
There is, however, another basis upon which we hold not only the doctor-patient but also the spousal privilege waived. The instant action is brought pursuant to EPTL 5-4.1, which authorizes an action for wrongful death only "for a wrongful act, neglect or default which caused the decedent’s death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued” (emphasis supplied). Thus to succeed in this action, which is wholly statutory in nature, plaintiff must establish that it could have been maintained by decedent had he survived (Emery v Rochester Tel. Corp., 271 NY 306 [not maintainable where there was no direct interference with decedent’s person]; Barnhart v American Concrete Steel Co., 227 NY 531 [not maintainable when barred by release in contract of employment]; Kelliher v New York City & Hudson Riv. R. R. Co., 212 NY 207 [not maintainable where Statute of Limitations had run during decedent’s lifetime]) and that defendants’ wrongful act caused his death. In final analysis, therefore, the issue is whether had Mr. Prink survived and brought the *316 action he could successfully have resisted defendants’ demand, in their effort to establish that his injuries resulted from attempted suicide rather than defendants’ negligence, for disclosure of his conversations with Dr. Doyle and with his wife.[3]
Clearly his privilege against self incrimination would not have helped him, for that privilege does not permit a plaintiff to claim affirmative relief and at the same time refuse to disclose information bearing upon his right to maintain his action (Levine v Bornstein, 13 Misc 2d 161, affd 7 AD2d 995, affd 6 NY2d 892). For essentially the same reason (the unfairness of mulcting a defendant in damages without affording him an opportunity to prove his lack of culpability [cf. Chambers v Mississippi, 410 US 284]), Mr. Prink as plaintiff could assert neither the physician-patient privilege (Koump v Smith, 25 NY2d 287, 294; see People v Al-Kanani, 33 NY2d 260, cert den 417 US 916) nor, we now hold, the conjugal privilege to foreclose inquiry concerning whether his injury was the result of an attempt at suicide.
In Koump plaintiff demanded authorization pursuant to CPLR 3121 to obtain defendant’s hospital record in an effort to show that defendant was intoxicated at the time his car crossed a center divider striking plaintiff’s car and injuring plaintiff. We upheld defendant’s claim of privilege in that case because defendant had done no more than deny plaintiff’s allegation that defendant was intoxicated and plaintiff’s only evidence of intoxication was an attorney’s affidavit reciting that the police report of the accident contained a hearsay statement that defendant appeared intoxicated. Nevertheless, we recognized (25 NY2d, at p 294): "that by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party waives the privilege” (emphasis in original).
Whatever the ultimate determination of the triers of fact may be in the present case and notwithstanding the presumption against suicide which they will have to consider in reaching their determination, we conclude that it is a matter *317 of common knowledge which we can judicially notice (Richardson, op. tit., § 44) that many apparently accidental deaths are in fact suicides and that a wrongful death complaint predicated upon an alleged accidental fall from a 36th story window is sufficiently equivocal in that respect to put in issue, by plaintiffs affirmative act in bringing the action, decedent’s mental condition (see Matter of Beeler v Hildan Crown Container Corp., 26 AD2d 163 [mental condition in issue where claimant’s decedent died in a fall from a 12th floor office]; see, also, Farber, Theory of Suicide, p 7; Gibbs Suicide, Introduction, p 13; Porterfield, Problem of Suicide [in Gibbs, Suicide], pp 33-34). To hold otherwise is to ignore the realities of the factual situation and to come perilously close to a taking of defendants’ property without due process of law (cf. Chambers v Mississippi, 410 US 284, supra). An additional reason, not however essential to our conclusion, for holding the privileges waived by the bringing of the action is that determination of the pecuniary injury sustained by Mr. Prink’s death necessarily involved his mental condition (see Freeman v Corbin Ave. Bus Co., 60 AD2d 824, mot for lv to app den 44 NY2d 649).[4]
Bearing in mind the purpose for which the privileges in question were created (see Richardson, op. tit, §§ 428, 447), the affirmative stance of plaintiff who claims on behalf of decedent’s distributees to have sustained pecuniary injury as a result of defendants’ negligence, and the unfairness of permitting plaintiff to succeed by hiding behind the privileges asserted, we are satisfied on balance that the better policy is to hold the privileges waived. The basis for that conclusion as to the physician-patient privilege is set forth in Koump v Smith (25 NY2d 287, supra; see, also, Wigmore, op. tit., § 2380a). As to the spousal privilege, its basis is well stated in McCormick, Evidence (2d ed, § 86, p 173) as follows:
"while the danger of injustice from suppression of relevant proof is clear and certain, the probable benefits of the rule of privilege in encouraging marital confidences and wedded harmony, is at best doubtful and marginal.
"Probably the policy of encouraging confidences is not the prime influence in creating and maintaining the privilege. It *318 is really a much more natural and less devious matter. It is a matter of emotion and sentiment. All of us have a feeling of indelicacy and want of decorum in prying into the secrets of husband and wife. It is important to recognize that this is the real source of the privilege. When we do, we realize at once that this motive of delicacy, while worthy and desirable, will not stand in the balance with the need for disclosure in court of the facts upon which a man’s life, liberty, or estate may depend.”[5]
Accordingly the certified question should be answered in the affirmative and the order of the Appellate Division should be affirmed.

. While plaintiffs testimony concerning what Dr. Doyle told her is clearly hearsay, that would not protect her from the disclosure required by CPLR 3101 which requires revelation of inadmissible testimony that may lead to discovery of admissible evidence (Baxter v Orans, 63 AD2d 875; see Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3101.05).

. To be distinguished, of course, is the common-law rule permitting an eavesdropper to testify concerning an otherwise privileged communication (see Lanza v New York State Joint Legislative Comm., 3 NY2d 92, 97, cert den 355 US 856; Richardson, op. cit., §§ 421, 443, 451 [a rule which, curiously, the Legislature has modified only as to the attorney-client privilege (CPLR 4503) and illegal eavesdropping (CPLR 4506) and not as to all privileges]). Thus, had Mrs. Prink overheard Dr. Doyle’s conversation with her husband as an eavesdropper rather than having learned its content from the doctor she could be required to disclose its content. The distinction, perhaps filagree in nature, is between the unauthorized act of the recipient of the confidence and the act of the eavesdropper who unauthorizedly intrudes himself upon the confidential conference. It results, apparently, from the confidant’s negligence in the eavesdropper situation in not assuring absolute secrecy at the time of disclosure, and the contradiction in terms that would be involved in taxing the confidant with negligence in relying upon the trust which is the very root of his relationship to the person in whom he has confided.

. Since we are, thus, concerned with the effect of EPTL 5-4.1 on Mr. Frink’s hypothetical action, we do not reach the effect of CPLR 4504 (subd [c]) and its troublesome exception of "information which would tend to disgrace the memory of the decedent” (see Tinney v Neilson’s Flowers, 35 AD2d 532; Richardson, op. cit., § 435) or the equally troublesome question whether suicide disgraces memory (see Richardson, loc. cit.).

. In light of that holding it is unnecessary for us to consider whether absent the extraordinary facts of the instant case, decedent’s mental condition was put in issue by defendants’ plea of an affirmative defense of suicide (see Constantine v Diello, 24 AD2d 821; Sito v Neumann, 92 Misc 2d 97; see, also, Koump v Smith, 25 NY2d 287, 296-300, supra).

. (Accord Hutchins & Slesinger, Some Observations on the Law of Evidence: Family Relations, 13 Minn L Rev 675, 682; Hines, Privileged Testimony of Husband and Wife in California, 19 Cal L Rev 390, 410-414.)
The injustice involved is the more apparent when, as here, the widow will benefit substantially from the recovery and, as the dissent concedes, CPLR 4502 (subd [b]) does not prevent her disclosure of her deceased husband’s statements. The Hobson’s choice suggestion of the dissent simply emphasizes the injustice; there was no grievous wrong for which to seek redress if decedent in fact committed suicide. Nor bearing in mind the presumption against suicide can it be said that the widow’s testimony "serves no purpose” because similar testimony may be available through the physician. Finally, with respect to Warner v Press Pub. Co. (132 NY 181), relied on by the dissent, while its holding was stated in terms of spousal privilege, the final paragraph of the decision strongly suggests that the true rationale for it was the court’s view of the husband’s motivation for his testimony, a factor affecting its weight but which should not affect its admissibility.