OPINION OF THE COURT
Shanley N. Egeth, J.
There are occasions when a routine and uncomplicated issue may arise in a context which compels a resolution of other tangential problems of complexity and import, or necessitates a discussion of related matters of significance. This motion presents such a situation. It mandates a discussion and determination of the permissible limits in civil litigation of the use of the privilege created by CPL 160.50 concerning the sealing of records in a criminal prosecution after acquittal. It also necessitates a review of the nature, objective, extent and powers applicable to the pretrial settlement conference. This subject has acquired a unique timeliness in view of Chief *298 Judge Cooke’s recent declaration of a state of a judicial emergency and his call for a total mobilization of the energies and resources of the Bench and Bar to combat calendar congestion in civil cases.
THE ACTION
This is an action for damages on a claim of false imprisonment and malicious prosecution. The action stems from an arrest of the plaintiff on June 15, 1976 on a complaint of larceny which was initiated by the defendant department store (Gimbels). It appears that a preliminary hearing was conducted, plaintiff was then held for trial and was thereafter acquitted of all charges after trial. Subsequent thereto the records in the criminal case were sealed pursuant to CPL 160.50.
THE MOTION
The defendant has moved for an order directing the plaintiff to execute and deliver to it a consent and authorization which would enable said defendant to procure the records of the criminal proceedings arising out of the incident upon which this action is predicated. Those records in the First District Court, Nassau, are presently sealed pursuant to CPL 160.50, following the acquittal in that court.
ORIGIN OF MOTION
The motion now made results from initiatives originally undertaken by this court during a pretrial conference. After the case appeared on the Trial Calendar of IC Part 11, this court held a series of conferences in an effort to effectuate a mediative amicable adjustment of the differences between the parties, or if not possible, to narrow potential trial issues, or if appropriate, to invite a motion or procedure which might be dispositive of all or part of the case without necessity of a full jury trial. During an inquiry and exchange relating to applicable facts and law, the court inquired as to the existence and disposition of a preliminary hearing in the criminal proceeding. Neither counsel was certain as to whether such a hearing was held, or as to its outcome. The court observed that this information was vital to a valid evaluation of the prospects of success at trial, and further, that it might justify an appropriate motion for summary judgment or partial summary judg *299 ment. It was agreed that the defendant would attempt to procure the necessary records. The case was adjourned for a further conference at which time the records were to be available. After delays and a number of conference adjournments, the defendant finally made a motion in Nassau County to procure the records. The motion was denied upon the grounds that the record was sealed and privileged pursuant to CPL 160.50, and that it was unavailable without the authorization of the plaintiff herein (defendant in the criminal proceeding). This was reported to the court at a subsequent conference. The defendant asked plaintiff for the necessary authorization. Plaintiff’s attorney refused, stating that he was not required to supply material which might be detrimental to his client’s case, and further, that this constituted additional discovery which was presently barred by the calendaring of the case and the service of a statement of readiness.
CALENDAR RULES
Plaintiff asserts that the instant application constitutes belated discovery which is now barred inasmuch as a note of issue and statement of readiness have long ago been served. (CPLR 3402, subd [a]; Rules for Bronx and New York County Supreme Ct„ 22 NYCRR 660.4 [d].)
The court does not agree. Even if the initial application for disclosure had originally been made by the defendant, rather than at the instigation of the court, as is the instant case, this court still would possess authority to permit belated disclosure in pursuit of justice to respond to unusual or unanticipated circumstances. (Fidler v Public Constructors, 39 AD2d 827 [disclosure authorized to "sharpen the issues and materially shorten the * * * trial”]; Shea v Pellicano, 29 AD2d 840, opp dsmd 22 NY2d 753; Pioneer Jewelry Corp. v All Continent Corp., 24 AD2d 436; see Cassidy v Kolonsky, 37 AD2d 880; cf. 68 Fifth Ave. Rest. v 59 Fifth Rest. Corp., 37 AD2d 780 [where party possessed peculiar knowledge]; Farrell v Reed, 16 AD2d 709 [peculiar knowledge]; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3402.12.) The supervision of disclosure is vested in the court in which the action is pending (Smith v Victory Container Corp., 30 AD2d 581; CPLR 3103, subd [a]). Justice (now Chief Judge) Cooke analyzed the enforcement, application and rationale of the statement of readiness rule in his opinion in Wahrhaftig v Space Design Group (33 AD2d 953, 954). He clearly indicated (p 953) that rigid enforcement is to *300 be encouraged to "relieve calendar congestion and to foster the orderly disposition and processing of litigated matters”.
Obviously if the demands of justice dictate nonenforcement of the rule, or if the Justice presiding, who is entrusted with wide discretion in control of his calendar (see Galante v Cohen’s Quality Bakery, 31 AD2d 997; Cohn v Borchard Affiliations, 30 AD2d 74, 75), determines that relief of calendar congestion and orderly processing of the litigated matter will better be served by compelling rather than restricting discovery, such a Judge possesses the power to attain this goal. (Wahrhaftig v Space Design Group, supra; see Barry v Mutual Life Ins. Co. of N. Y., 53 NY 536, 539; Gillet v Beth Israel Med. Center, 99 Mise 2d 172.) Clearly, the Supreme Court has the inherent authority to deal with cases before it in an appropriate manner (Teitelbaum Holdings v Gold, 48 NY2d 51, 54; Langan v First Trust & Deposit Co., 270 App Div 700, affd 296 NY 1014).
In the instant situation this court on its own initiative requested the material now sought in order to render meaningful its conference function, and to appropriately limit and frame the proper issues for trial.
RELEVANCE OF RECORDS
The nonexistence of probable cause is essential for the successful maintenance of an action for malicious prosecution (Broughton v State of New York, 37 NY2d 451, 457, cert den sub nom. Schanbarger v Kellogg, 423 US 929; Graham v Buffalo Gen. Laundries Corp., 261 NY 165; Wallenstein v Rosenbaum, 241 App Div 374; Trottier v West, 54 AD2d 1025). In this type of action a "prima facie rule” has developed pursuant to which a finding of probable cause by a Grand Jury indictment or in a preliminary hearing creates a rebuttable presumption that the prosecution was induced by probable cause. This presumption may only be overcome by a showing of fraud, perjury, or the misrepresentation or falsification of evidence at the preliminary hearing or to the Grand Jury (Broughton v State of New York, supra; Trottier v West, supra), although earlier cases which may still have continued validity after Broughton (supra) would indicate that some other grounds may be available to overcome the presumption (Graham v Buffalo Gen. Laundries Corp., supra; Wallenstein v Rosenbaum, supra; Beall v Dadirrian, 62 Misc 125, affd 133 App Div 943). It should also be noted that the Appellate *301 Division, First Department, has recently applied this prima facie rule and granted summary judgment in favor of a defendant when the plaintiff failed to meet the burden of setting forth evidentiary facts to rebut the presumption created by an indictment (Johler v Consolidated Laundries Corp., 54 AD2d 632).
In an action for false imprisonment or false arrest, the acquittal after trial or other dismissal of the criminal action is not dispositive of the civil suit. The key issue in the civil action involving a department store is whether the defendant had "reasonable grounds” for the detention (General Business Law, § 218; Jacques v Sears, Roebuck & Co., 30 NY2d 466).
The Broughton case (supra) holds that the "prima facie rule” and its presumption is only applicable to a malicious prosecution action, and not to an action for false imprisonment. It does hold, however, that in a false imprisonment case, a finding of probable cause in a preliminary hearing is "some proof of the presence of probable cause” (Broughton v State of New York, 37 NY2d 451, 458, supra). There is case authority indicating that the statutory "reasonable grounds” and probable cause are coextensive (Tota v Alexander’s, 63 Misc 2d 908, affd 38 AD2d 892; see, also, Mullen v Sibley Lindsay & Curr Co., 70 AD2d 763). Hence, this proof is germane to an attempt to establish the statutory defense of "reasonable grounds” in an action for false arrest, false imprisonment, unlawful detention, etc., as enumerated in section 218 of the General Business Law.
It would therefore appear obvious that the ability to prove the existence of a finding of probable cause in the prior criminal court preliminary hearing to warrant a criminal trial might be determinative of the civil action for malicious prosecution, and most certainly would be probative of the existence of a defense to both the civil causes of action alleged in this case.
STATUTORY PRIVILEGE
In 1976 our State Legislature enacted CPL 160.50. This provided protection in the form of future anonymity for a person acquitted after prosecution upon a criminal charge. This statute compels the sealing of the criminal record, and directs that "such records shall be made available to the person accused or to such person’s designated agent” (CPL 160.50, subd 1, par [d]). This statute creates a protection for *302 this plaintiff which is akin to a privilege. The defendant in this case has no right to procure or examine the sealed record unless plaintiff waives the statutory privilege and consents thereto. The instant motion, if granted without consent, would effectuate an involuntary relinquishment of the plaintiff’s statutory privilege. If plaintiff wishes to maintain the privilege this court should exercise great care before divesting the plaintiff of the statutory right.
Plaintiff, however, has no concomitant right to maintain this action while insisting upon the enforcement of her privilege. There is no doubt that the proof in the present action involves the identical facts as those which were litigated in the sealed criminal proceeding. Plaintiff may not continue to enforce a right to suppress the criminal record while simultaneously continuing to prosecute a civil claim for damages arising out of the same incident and identical facts. The purpose of the statute is to protect her from public odium arising out of the disclosure of her arrest. The commencement of this action, and the resultant public trial and record, would actually negate the purpose of the statutory protection. "The object of [the] statute is to prevent the disclosure of [the plaintiff’s] secrets against [her] will, and not to interpose an obstacle to the administration of justice by preventing inquiry with respect to facts already made public by the [plaintiff herself]” (Kriger v Holland Furnace Co., 12 AD2d 44, 48). To permit this plaintiff to maintain her privilege while continuing the prosecution of the civil case would allow her "to use it as a sword rather than a shield” and thereby place the defendant in the civil suit in an impossible, intolerable, unjust and nondefensible litigation posture (see Koump v Smith, 25 NY2d 287, 294).
Our courts have been consistent in holding that "a privilege does not permit a plaintiff to claim affirmative relief and at the same time refuse to disclose information bearing upon his right to maintain his action”. (Prink v Rockefeller Center, 48 NY2d 309, citing Levine v Bornstein, 13 Misc 2d 161, affd 7 AD2d 995, affd 6 NY2d 892.)
The application of this principle to a malicious prosecution action is no different in theory than its application in the other circumstances in which it has been consistently applied. (Prink v Rockefeller Center, supra [spousal and physician-patient privilege in wrongful death action]; Koump v Smith, supra [physician-patient privilege in a negligence action]; *303 Levine v Bornstein, supra [assertion of privilege against self incrimination relating to affirmative defense of champerty resulted in dismissal of plaintiffs complaint]; see People v Al-Kanani, 33 NY2d 260, cert den 417 US 916 [physician-patient privilege on issue of insanity in murder prosecution]; Greenberg v CBS, Inc., 69 AD2d 693 [reporter’s privilege in defamation action]; Matter of Beeler v Hildan Crown Container Corp., 26 AD2d 163 [relating to mental condition re suicide issue].)
Although this court may, it does not believe that it should compel the plaintiff to waive her statutory privilege. It can and will, however, prevent the unfair continuation of the action by a plaintiff who insists upon maintaining the right to claim the privilege. This court certainly possesses the authority, under the circumstances present herein, to dismiss or suspend the right to seek affirmative relief upon the part of a party in an action who refuses to waive a valid and proper privilege. (Levine v Bornstein, supra [pleading dismissed]; Greenberg v CBS, Inc., supra [preclusion from offering related evidence re defense of verification]; Kriger v Holland Furnance Co., 12 AD2d 44, 47, supra [suspension of advancement for trial].)
DETERMINATION
It is accordingly, clear that while plaintiff has an absolute abstract right to continue to claim her statutory privilege to keep the record sealed, she may not simultaneously persist in the enforcement of this right while continuing to prosecute her civil cause of action. Fairness requires that the defendant have access to all material which may be necessary to a proper defense of the action in order to avoid a deprivation of its rights or property without due process of law (see Chambers v Mississippi, 410 US 284; Prink v Rockefeller Center, 48 NY2d 309, supra). This court will therefore exercise its powers to fashion a remedy which it believes will best balance and preserve the right of both parties hereto (Teitelbaum Holdings v Gold, 48 NY2d 51, supra; Langan v First Trust & Deposit Co., 270 App Div 700, supra; Lawrence v Cowperthwait, 150 Misc 326).
OVERVIEW
PERSPECTIVES ON CONFERENCING
A properly conducted pretrial conference is the most *304 effective weapon in the judicial arsenal available to combat calendar delay and to provide a litigant with timely justice. Despite the terminology, the "pretrial” conference function should not be limited to the pretrial stage, but should rather constitute a cumulative continuing judicial effort prior to judgment, aimed at achieving a total or partial avoidance of the delay and expense of unnecessary trial resolution of issues.
While it is fundamental that every litigant possesses an absolute right of constitutional dimension to have a dispute judicially resolved in a trial which provides a meaningful opportunity to articulate the merits of the case and to procure a final determination from a court or a jury, not every litigant requires or even seeks dispute resolution only by decision after trial. While no litigant should be pressured, coerced or improperly induced to forego the right to trial, most litigants and their counsel invite and welcome judicial assistance which effectuates compromise or clarification resulting in avoidance or reduction of the risk and uncertainty of adverse trial result, or the economic burden and the psychological strain inherent in the trial.
Our judicial system would totally collapse if every case were required to be tried to completion. Justice to the litigant mandates a Judge’s mediative effort to achieve an acceptable and amicable accord terminating litigation, as well as a flexible inquiry and the utilization of appropriate devices to narrow and reduce issues which would otherwise require trial disposition. Appropriate judicial pursuit of this objective may be of equal or greater significance to our system of justice, and to the needs of the litigants and the organized Bar, than the performance of the more visible judicial function of presiding over a trial.
A thorough analysis of the potential factual proofs of the parties and of the applicable legal principles frequently results in the elimination of the necessity for trial resolution of issues. It may result in a recognition that a number of issues are not in dispute; that a party’s legal position is untenable; or that prior expectations of success at trial are in fact not as realistic as originally assumed. Consequently, a new flexibility and amenability to compromise may develop in the litigants and their counsel, which renders possible the effectuation of a total or partial accord.
In the course of the judicial effort to achieve a negotiated *305 voluntary settlement which disposes of the entire dispute between the parties, the court should be ever alert and vigilant to the possibility of ultimate disposition of partial trial issues, so as to limit the trial in the event that a total effort is not successful.
Frequently, it may be necessary during the conference to arrange for a bifurcated trial (by consent or otherwise) to resolve a key threshold issue which may dispose of an entire action or resolve the single issue which bars a negotiated settlement of the dispute.
Additionally, awareness that a jury trial consumes at least 25% over the time of a trial without a jury should prompt regular judicial inquiry as to the possibility of an agreement to waive the right of trial by jury.
As part of the conference process, the court should utilize all available procedural tools with full recognition that "[t]he power of a trial court to exercise supervisory control over all phases of pending actions and proceedings has long been recognized”. (Teitelbaum Holdings v Gold, 48 NY2d 51, 54, supra, citing Barry v Mutual Life Ins. Co. of N. Y., 53 NY 536, 539.)
Frequently this inquiry will result in a total agreement as to facts, expressed in a stipulation, thereby enabling the court to decide the case as a matter of law without trial. On other occasions most or many, but not all, facts may be stipulated to, thereby substantially limiting the issues or causes of action to be determined at trial. If the court’s inquiry suggests the possibility that no triable issue of fact exists, but not all parties agree, and therefore a mutual stipulation as to facts is not feasible, the court may, and indeed should, invite or direct a party to move for summary judgment or partial summary judgment.
It may likewise appear to the court after its inquiry that the applicable law provides a possible complete or partial defense to the claim, that no valid cause of action exists, or that some alleged causes of action are legally not viable. In such an instance the court should again invite or direct the making of an appropriate motion to avoid an entire trial, or at least a significant portion thereof.
Frequently, as in the instant case, the court discerns that counsel may be unaware of crucial facts, proofs, issues or applicable principles of law. A request for a memorandum of law as to specified matters may also result in an educational *306 process which compels counsel to confront the realities of their trial prospects. This may result in a new flexibility which makes feasible a resolution of all or some of the issues without the burden or expense of trial. To the same effect, the discretionary (even belated) granting of an application for additional discovery, or a judicial initiative to procure necessary facts, documents or evidence, may result in the avoidance of an unnecessary trial as to all or some issues. In the instant case the court on its own initiative sought vital information concerning the preliminary hearing in the criminal action (not investigated by either party prior to the pretrial conference) and further suggested that a motion for summary judgment might thereafter be appropriate to dispose of one or both causes of action pleaded.
This court is sensitive to the valid criticism that in a number of instances an administrative desire to deal with a judicial calendar emergency and to procure economies within the judicial establishment has prompted a judicial response which sacrifices the quality of justice upon the altar of economy, efficiency and expendiency. There can be no justification for judicial management of a pretrial conference to achieve these ends, without consideration of the quality of justice and the legitimate rights and needs of the litigants. This court believes, however, that a pretrial conference can be properly and sensitively conducted by a Judge to better achieve quality justice (at less financial and emotional expense) for the litigants, increased responsiveness to the legitimate needs of the Bar, and incidental benefit to our judicial system. Although it may seem paradoxical, an appropriate judicial response to the current declared court emergency, with skill and sensitive exercise of the conference function, has the potential of transforming a prior inordinate preoccupation with case disposition statistics into an appropriate quest for the achievement of justice.
DECISION
Unless within 15 days following service of a copy of the order to be entered herein, plaintiff delivers an appropriate consent and authorization to the defendant for the procurement of the sealed records of the preliminary hearing, this case shall be marked off the calendar. It may not thereafter be restored unless and until the plaintiff procures the records, including a transcript of the minutes of the preliminary *307 hearing, and delivers them to this court for an in camera inspection. The costs therefor shall be taxed against the unsuccessful party. Leave is additionally granted for the service thereafter, if appropriate, of a motion for summary judgment or partial summary judgment.