OPINION OF THE COURT
Gerard E. Delaney, J.
In this case of first impression the issue is whether in a contract action by a third-party beneficiary on a life insurance policy against the defendant insurer, the evidentiary “attorney-client” privilege of CPLR 4503 (subd [a]) will prevent a disclosure of communications of the deceased with his attorney which may further be relevant to and probative of the cause of death of the deceased, to wit, suicide, by tending to show deceased’s mental condition at the time of his death.
In the facts of this case the court holds that such privilege as may have existed between deceased and his attorney has been waived by the commencement of this contract action by the third-party beneficiary for life insurance benefits under the logical extension of the Court of Appeals holding in Prink v Rockefeller Center (48 NY2d 309) analyzed below and accordingly denies the instant motion by decedent’s attorney (also the attorney for plaintiff) to quash a judicial subpoena issued by defendant requiring him to appear and give testimony.
There is no question but that decedent, Frank Martin, had an attorney-client relationship with his counsel, *777 James J. Daily, Esq., prior to decedent’s death on June 22, 1981. Prior disclosures of other witnesses have shown that on the day of his death decedent complained of marital problems, spoke of an impending vacation, appeared upset and stated that he was going to see his lawyer. Decedent’s lifeless body was recovered from Long Island Sound later that same day. Decedent’s death was ruled “suicide” by “drowning” by the Westchester County Medical Examiner.
Decedent had carried a policy of life insurance with defendant, John Hancock Mutual Life Insurance Company, at the time of his death. His wife, plaintiff, Susan B. Martin, was beneficiary of the proceeds of the policy which by its terms would pay to her the sum of $10,000 on the death of her husband and $20,000 if the death were accidental. Under the circumstances defendant refused to pay plaintiff more than the $10,000 bottom limit and plaintiff commenced the instant action to recover the additional sum for “accidental” death.
On June 7, 1983, defendant, through its counsel, served a subpoena upon James J. Daily, Esq., decedent’s attorney, which required his appearance to give testimony on July 7, 1983. Citing CPLR 4503 (subd [a]), he now moves to quash such subpoena. It is noted that Mr. Daily denies having contact with decedent on June 22,1981, but concedes prior contact in his attorney-client relationship at unspecified times.
The actual issue in the underlying action on this motion is whether Frank Martin’s death was “accidental” or if in fact it was a suicide.
“The attorney-client privilege is, in this State, a creature of statute. (CPLR 4503, subd [a].) It exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment. (See, e.g., Matter of Jacqueline F., 47 NY2d 215, 218; Hurlburt v Hurlburt, 128 NY 420, 424; see, also, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2291 [hereinafter Wigmore]; Richardson, Evidence [10th ed], § 410.) The privilege, however, is not limitless. It has long been recognized that ‘the attorney-client privilege constitutes an “obstacle” to the truth- *778 finding process, the invocation of which should be cautiously observed to ensure that its application is consistent with its purpose.’ (Matter of Jacqueline F., 47 NY2d 215, 219, supra; see, also, Matter of Horowitz, 482 F2d 72, 81-82; Matter of Field, 408 F Supp 1169, 1173; 5 Weinstein-KornMiller, NY Civ Prac, par 4503.19, p 45-148; 8 Wigmore, § 2291, p 554.)
“Defining the limits of the privilege is, of course, not an easy task. * * * [N]o clear rule of general application can be simply articulated. Indeed, as we have often observed, ‘ “much ought to depend on the circumstances of each case.” ’ (See Matter of Jacqueline F., 47 NY2d 215, 222, supra; and Matter of Kaplan [Blumenfeld], 8 NY2d 214, 219 * * * [EJven where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure. (Matter of Jacqueline F., 47 NY2d 215, supra; People ex rel. Vogelstein v Warden of County Jail of County of N. Y., 150 Misc 714, supra.)” (Matter of Priest v Hennessy, 51 NY2d 62, 67-69.) “The privilege is vested in the client and may not be waived by the attorney after the client’s death (Matter of Cunnion, 201 NY 123; Matter of Williams, 179 Misc 805, 808; Matter of Olson, 73 NYS2d 876; 4 Bender’s, NY Evidence, § 245.01, subd 10).” (Matter of Trotta, 99 Misc 2d 278, 281.)
Defendant relies principally on the Court of Appeals decision in Prink v Rockefeller Center (48 NY2d 309, supra) as being sufficiently analogous to be dispositive of this matter as well. This court agrees.
In Prink, plaintiff sued in her representative capacity as administratrix of her deceased husband’s estate in a wrongful death action under EPTL 5-4.1. The question in such case was whether the evidentiary privileges of “husband-wife” (CPLR 4502, subd [b]) and “physician-patient” (CPLR 4504) would prevent disclosure concerning the mental condition of the decedent “whose unwitnessed death occurred under circumstances consistent with either negligence of the defendant or suicide”. (Prink v Rockefeller Center, supra, p 313.)
The Prink court found that while the recipient of confidential information could not himself waive the client’s *779 privilege even after death, privileges were waived by type of action which was commenced, i.e., wrongful death. Since the action was itself statutory in nature, the plaintiff under EPTL 5-4.1 had to establish “that it could have been maintained by decedent had he survived”. (Prink v Rockefeller Center, supra, p 315.) Having reached such determination the court viewed the issue as “whether had [decedent] survived and brought the action he could successfully have resisted defendant’s demand, in their effort to establish that his injuries resulted from attempted suicide rather than defendant’s negligence, for disclosure of his conversations with [his doctor] and with his wife.” (Prink v Rockefeller Center, supra, pp 315-316.)
It is noted that in the instant case plaintiff is not suing in a representative capacity, for the insurance proceeds pass without the estate, albeit that she is the beneficiary. Indeed it is not plaintiff who brings the instant motion to quash but her attorney on behalf of himself for his deceased client, plaintiff’s husband. Has plaintiff by merely bringing this action to recover as beneficiary under the insurance policy put into issue her husband’s mental condition so as to herself bring about a waiver of the attorney-client privilege her husband had gained by his dealings with Mr. Daily, the nonparty attorney movant? The Prink court found it unnecessary under its facts “to consider whether * * * decedent’s mental condition was put in issue by defendants’ plea of an affirmative defense of suicide”. (Prink v Rockefeller Center, supra, p 317, n 4.)
“The burden of proving that the party’s mental * * * condition is in controversy * * * is on the party seeking the examination” (Koump v Smith, 25 NY2d 287, 300). In light of the circumstances of this case, to wit, a medical examiner’s report which indicates, inter alla, the cause of death to be “asphyxia due to drowning — suicide”, this court finds that defendant has sufficiently shown that the decedent’s mental condition is in issue in this matter. “[S]uicide at common law required that an individual ‘purposely set in motion a death-producing agent with the specific intent of effecting his own destruction’ ”. (Matter of Fox, 102 Misc 2d 184, 205, mod on other grounds sub nom. Matter of Eichner [Fox], 73 AD2d 431, mod on other grounds 52 NY2d 363.)
*780 There is no question but that there was a contract of life insurance between deceased, Frank Martin, and defendant. The plaintiff, Susan Martin, is a third-party beneficiary of such policy and may recover only pursuant to its terms. Defenses to the promisor defendant life insurance company, on the contract which induced its promise, are available to the same extent that it would be if it were sued by the initial promisee (i.e., Frank Martin).
The burden of proof (is) upon the plaintiff to show that the death was caused entirely by accidental means and upon the defendant to show that the insured committed suicide. (See Ostrander v Travelers Ins. Co., 265 NY 467; cf. Whitlach v Fidelity & Cas. Co., 149 NY 45.)
The defense of suicide is affirmative and the burden of sustaining it rests upon the insurance company. (Cf. Benard v Protected Home Circle, 161 App Div 59; Goldschmidt v Mutual Life Ins. Co., 134 App Div 475.) Under Mutual Life Ins. Co. v Hillmon (145 US 285), testimony regarding the state of mind or intention of the decedent may be used inferentially to prove other matters which are in issue.
The “conditional” promise within the contract of insurance with Frank Martin was that his beneficiary, plaintiff, would recover $20,000 on his death only if such were “accidental”. If such death were not accidental, e.g., suicide, only the nominal recovery of $10,000 was to be paid to the third-party beneficiary, plaintiff, Susan Martin, in this action. If indeed the deceased violated the “condition” requiring “accidental” death for double recovery, the beneficiary cannot recover such amount for the duty of the defendant to pay the $20,000 amount was conditioned upon deceased’s performance in the manner of his death. It is fundamental that the beneficiary’s rights flow from the contract itself (see, generally, 2 Appleman, Insurance Law & Practice, § 771); her “rights [being] no greater than those of the assured, and the policy in [her] hands is subject to attack exactly as it would have been had the assured lived.” (New York Life Ins. Co. v Faillace, 138 Misc 182, 183, affd 231 App Div 826.)
This court finds Prink v Rockefeller Center (48 NY2d 309, supra) sufficiently analogous to the issues and policy con *781 siderations to be controlling albeit that this is a contract action and not one where plaintiff sues in a literal representative capacity.
The motion under CPLR 2304 to quash the subpoena served on Mr. Daily on June 7,1983, to the extent that it is grounded upon the attorney-client privilege of CPLR 4503 (subd [a]) concerning dealings by Mr. Daily with Frank Martin prior to Mr. Martin’s death is denied.
It is further clear that the subject matter of such subpoena is not concerned with postdeath material prepared for litigation, i.e., CPLR 3101 (subd [d], par 2), or attorney’s work product (CPLR 3101, subd [c]) and such is denied on these issues only without prejudice. It is therefore ordered that James J. Daily comply with the subpoena issued by counsel for defendant and give testimony at a mutually convenient date, time and place to be further determined by the respective parties to such motion.