NO. 3--95--0568

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

D.C.,                                 )  Appeal from the Circuit Court

                                )  of the 12th Judicial Circuit,

     Plaintiff-Appellant,        )  Will County, Illinois

                                 )

v.                               )  No. 94 L 7473

                                 )  

S.A. and J.A., JR.,              )  Honorable 

                                 )  Herman Haase,                 

     Defendant-Appellees.        )  Judge Presiding     

                                                                  

                                     

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

                                                                 

     This interlocutory appeal raises the question whether a

plaintiff who files a negligence lawsuit introduces his mental

condition as an element of his claim and thereby waives his

privilege to refuse disclosure of mental health records under the

Mental Health and Developmental Disabilities Confidentiality Act

(Mental Health Act) (740 ILCS 110/1 et seq. (West 1992)).  We

hold that a plaintiff does not waive this privilege by filing a

negligence action.  Therefore, we reverse the circuit court's

judgment.  

     In June 1992, the plaintiff, D.C., was injured when he was

struck by an automobile at an intersection.  The plaintiff spent

several days in the hospital and thereafter sought treatment at a

mental health facility.  He then brought suit against S.A., as

the driver of the automobile, and J.A., Jr., as S.A.'s principal,

seeking damages for injuries suffered as a result of the

accident.  The plaintiff's complaint alleged that he was in the

exercise of ordinary care for his own safety at the time of the

accident; otherwise, however, the complaint made no mention of

the plaintiff's mental state at the time of the accident. 

Moreover, the plaintiff did not include within his claim for

damages any injuries to his mental health or expenses incurred

from his stay at the mental health facility.      

     The defendants filed an answer, affirmative defenses, and a

counter-complaint, seeking compensation for damage to their

automobile.  The affirmative defenses and counter-complaint

alleged that the plaintiff failed to exercise ordinary care for

his safety.  The plaintiff denied these allegations.

     During discovery, the plaintiff produced a letter from his

treating physician which raised the possibility that the

plaintiff intentionally walked in front of the defendants' car in

a suicide attempt.  On the basis of this information, the

defendants moved to compel production of the psychiatric records

compiled during the plaintiff's stay at the mental health

facility.  The plaintiff refused disclosure pursuant to the

psychotherapist-patient privilege contained in section 10 of the

Mental Health Act (740 ILCS 110/10 (West 1992)).  The plaintiff

did, however, submit the records to the circuit court for an in

camera inspection.

     After reviewing the records in camera, the circuit court

determined that while many of the records in question were

privileged, there was a category of records which "refer to how

the patient got into the hospital and what led up to this

particular incident, and there are things there that I think do

relate pretty directly to this accident."   The court also found

that the plaintiff introduced his mental condition either by

filing the lawsuit or by alleging that he was in the exercise of

due care for his own safety.  The court certified this issue for

interlocutory review, which we granted pursuant to Supreme Court

Rule 308(a) (134 Ill. 2d 308(a)).     

     The sole issue for our review is whether a plaintiff who

files a negligence suit waives his privilege to refuse the

disclosure of mental health records. 

     This question requires us to construe section 10 of the

Mental Health Act.  The task of statutory construction is to

ascertain and give effect to the legislature's intent.  People v.

Scharlau, 141 Ill. 2d 180, 565 N.E.2d 1319 (1990).  If the

legislature's intent is clear from the statute's language, the

court must confine its inquiry to a consideration of that

language and must not look to extrinsic aids. In re Marriage of

Logston, 103 Ill. 2d 266, 469 N.E.2d 167 (1984).  If, however,

statutory language is susceptible of more than one

interpretation, the court may look beyond the  language to

consider the purposes to be served by the statute. Sisters of

Third Order of St. Francis v. State ex rel. Barra, 151 Ill. App.

3d 875, 503 N.E.2d 1069 (1987).  Questions of statutory

construction are questions of law.  Wright v. Chicago Municipal

Employees Credit Union, 265 Ill. App. 3d 1110, 639 N.E.2d 203

(1994).   

     Section 10 of the Mental Health Act provides that in any

civil proceeding a recipient of mental health services may refuse

to disclose the records of such services.  740 ILCS 110/10(a)

(West 1992).  If, however, a recipient introduces his mental

condition as an element of his claim or defense, then the records

are subject to disclosure, provided certain other conditions are

met. See 740 ILCS 110/10(a)(1) (West 1992).  The question we must

answer is whether a plaintiff who files a negligence lawsuit

"introduces his mental condition as an element of his claim."

     The court in Webb v. Quincy City Lines, Inc., 73 Ill. App.

2d 405, 219 N.E.2d 165 (1966) held that a plaintiff in a personal

injury action did not introduce her mental condition as an

element of her claim by seeking damages for pain and suffering. 

The Webb court read the exception's language narrowly in holding

that the privilege existed unless the plaintiff specifically made

her condition a part of her claim.  The court went on to hold

that a general allegation of pain and suffering did not rise to

the level of specificity required to effectuate a waiver of the

privilege. 73 Ill. App. 2d at 408-9, 219 N.E.2d at 167.  To the

same effect is Tylitzki v. Triple X Service, Inc., 126 Ill. App.

2d 144, 261 N.E.2d 533 (1970) (plaintiff must "affirmatively"

place mental condition at issue to effect waiver).     

     The plaintiff's mental condition in Webb was raised in

reference to the issue of damages.  In this case, the plaintiff's

condition bears upon the issue of liability.  No court has yet

applied the Webb court's rationale where the mental condition in

question was relevant to the issue of liability.  However, the

court in Maxwell v. Hobart Corp., 216 Ill. App. 3d 108, 576

N.E.2d 268 (1991), did decide that an implied waiver may be found

where the plaintiff's mental condition is relevant to the

liability issue in a strict products liability action.  But we

disagree with the Maxwell court's reasoning and therefore decline

to apply it to actions involving negligence.

     The plaintiff in Maxwell was injured when his hand became

caught in a waste equipment machine.  He sued the machine's

manufacturer under a strict products liability theory, but

apparently made no mention of his own mental condition in the

complaint.  Through discovery, the defendant found that the

plaintiff may have been intoxicated at the time of the accident,

and therefore requested records pertaining to the plaintiff's

treatment for alcoholism.  216 Ill. App. 3d at 109-10, 576 N.E.2d

at 269.  

     Although the Maxwell court held that the Mental Health Act

did not govern records relating to treatment for alcoholism, it

nonetheless considered whether § 10's exception would have

applied if the records had been governed by the Act.  The court

determined that the plaintiff impliedly introduced his

"physiological and biological condition" at the time of the

accident by filing the strict liability action.  216 Ill. App. 3d

at 113, 576 N.E.2d at 271.  This determination was based upon

three separate arguments: first, that a plaintiff impliedly

introduces his mental condition by alleging that a defendant

proximately caused his injuries; second, that a plaintiff's

comparative fault is relevant in strict liability cases; and

third, that plaintiffs who initiate litigation cannot use the

privilege as a shield when mental condition is a "critical

consideration" in the case.  216 Ill. App. 3d at 113, 576 N.E.2d

at 271.  None of these arguments are persuasive. 

     The Maxwell court's first argument fails because, although a

plaintiff's contributory negligence may be a proximate cause of

his injuries, the plaintiff's only burden is to prove that the

defendant's acts proximately caused his injuries.  The

plaintiff's actions become relevant only if the defendant raises

the issue of comparative negligence.  See Casey v. Baseden, 111

Ill. 2d 341, 490 N.E.2d 4 (1986); Long v. City of New Boston, 91

Ill. 2d 456, 440 N.E.2d 625 (1982).  It follows that a plaintiff

may recover in a negligence action without calling into question

his own actions at the time of the accident.  Accordingly, we

cannot agree that a plaintiff necessarily raises his mental

condition as an element of his claim by alleging that the

defendant's conduct proximately caused his injuries.  See

generally W. Keeton, Prosser & Keeton on Torts § 65, at 452 (5th

ed. 1984).  

     As to the second argument, we agree that a plaintiff's

mental condition may be relevant to the issue of comparative

negligence.  But the test for whether a recipient has waived his

privilege is not whether the privileged information is relevant;

instead, it is whether the recipient has introduced his condition

as an element of his claim.  Therefore, waiver cannot be premised

on the degree to which mental health records are relevant to the

proceedings for which they are sought. 

     The Maxwell court's third argument is that plaintiffs should

not be allowed to use the Mental Health Act's privilege to bar

disclosure of evidence bearing on "critical considerations" in

the cases they initiate.  The defendants in the case at bar echo

this argument when they suggest that plaintiffs should not be

able to sue other people for injuries caused by their own suicide

attempts "and then suppress any evidence of their suicidal

intent."  The gist of this argument seems to be that recipients

who initiate litigation should not have the same access to the

Mental Health Act's privilege as do recipients who defend

actions.  

     The Mental Health Act's privilege applies unless the

recipient introduces his mental condition as an element of his

claim or defense.  We do not believe the legislature would have

made reference to a recipient's "claim" had it not intended for

plaintiffs to assert the privilege.  Moreover, regardless of

whether a plaintiff or defendant asserts the privilege, its

successful application may result in the exclusion of relevant

evidence.  In every case, the exclusion of relevant evidence

creates the possibility that liability may fall upon the party

other than whom it may have fallen upon had the evidence been

admitted.  Therefore, it is no more problematic for a plaintiff

to assert the privilege than it is for a defendant to do so.

      Apart from the arguments raised in Maxwell, there is no

basis under section 10 of the Mental Health Act for the

application of different standards depending on whether a

recipient's mental condition is relevant to damages or to

liability.  Section 10's exception applies whenever a recipient

introduces his mental condition as an element of his claim.  Both

damages and liability are elements of a negligence plaintiff's

claim.  Therefore, if the Webb and Tylitzki courts were correct

in holding that a mental condition may be introduced only through

a specific or affirmative statement of the condition, this rule

must apply regardless of whether the mental condition bears on

the question of damages or liability.        

     We see no reason to depart from the rule in Webb and

Tylitzki, which comports with the case law in other

jurisdictions.  In both Dillenbeck v. Hess, 73 N.Y.2d 278, 536

N.E.2d 1126, 539 N.Y.S.2d 707 (1989) and Clark v. District Court,

Second Judicial District, City and County of Denver, 668 P.2d 3

(Colo. 1983), it was held that a waiver of confidentiality may be

found in either the damages or liability context only where a

litigant affirmatively places his condition at issue.  The Clark

court explained:

     "When the privilege holder pleads a physical or mental

     condition as the basis of a claim or as an affirmative

     defense, the only reasonable conclusion is that he

     thereby impliedly waives any claim of confidentiality

     respecting that same condition.  The privilege holder

     under these circumstances has utilized his physical or

     mental condition as the predicate of some form of

     judicial relief, and his legal position as to that

     condition is irreconcilable with a claim of

     confidentiality * * *."  668 P. 2d at 10; cf. State v.

     Valley, 153 Vt. 380, 571 A.2d 579 (1989) (criminal

     defendant who pleads insanity defense places mental

     condition at issue).  

It follows that where a litigant seeks relief that is not

predicated upon his own mental condition, he does not lose the

right to assert the privilege.     

     In view of the foregoing, we hold that a plaintiff-recipient

does not waive his privilege to refuse disclosure of mental

health records unless he specifically or affirmatively raises the

condition as an element of his claim.  Because the filing of a

negligence action does not require a plaintiff to specifically or

affirmatively plead his mental condition, we conclude that a

plaintiff does not necessarily introduce his mental condition as

an element of his claim.   

       In the case at bar, the plaintiff did not plead his mental

condition in an effort to establish either the defendants'

liability or injuries to his mental health.  He did allege that

he was in the exercise of due care for his own safety at the time

of the accident, but there are two reasons why this allegation is

insufficient to constitute a waiver.  First, the general

allegation that one was in the exercise of due care for his own

safety does not rise to the level of specificity required to

effect a waiver.  Second, this allegation is not necessary to the

plaintiff's claim.  See Long v. City of New Boston, 91 Ill. 2d

456, 440 N.E.2d 625 (1982) (negligence plaintiff need not plead

freedom from contributory negligence).  Therefore, the plaintiff

may amend his complaint to drop this allegation and still prevail

on his claim.

     We are left, then, to conclude that the only manner by which

the plaintiff's mental condition becomes an issue in this case is

through the defendants' attempt to establish comparative

negligence.  Section 10 of the Mental Health Act cannot be read

to permit defendants to discover plaintiffs' mental health

records in order to prove comparative negligence.  For, if the

legislature had so intended, it would have joined those states

which allow any party, not just the recipient, to introduce the

recipient's mental condition as an element of a claim or defense. 

See, e.g., R.K. v. Ramirez, 38 Tex. Sup. Ct. J. 52, 887 S.W.2d

836 (1994); State v. Valley, 153 Vt. 380, 571 A.2d 579 (1989). 

As things stand, however, only the recipient may waive his

privilege under the Mental Health Act. See Pritchard v. Swedish-

American Hospital, 191 Ill. App. 3d 388, 547 N.E.2d 1279 (1989). 

Consequently, the defendants' attempt to introduce the

plaintiff's mental condition cannot constitute a waiver of his

privilege.

     The result in this case may be perceived in some quarters as

an affront to justice and common sense.  In other quarters it

might be viewed as the price society must pay to protect the

psychotherapist-patient relationship.  Cf. Jaffee v. Redmond, ___

S.Ct. ___, 1996 WL 315841 (1996) (court recognizes common law

psychotherapist-patient privilege under Rule 501 of the Federal

Rules of Evidence).  But regardless of where persons come down on

this issue, our holding is compelled by the plain language of

section 10 of the Mental Health Act, and no one can dispute that

the legislature has the power, through the enactment of

evidentiary privileges, to inhibit the truth-seeking process to

protect certain relationships.  It is for the legislature, and

not the courts, to determine whether the Mental Health Act has

tilted the balance between truth-seeking and the protection of

patient-psychotherapist relationships too far in either

direction.   

     For the foregoing reasons, the judgment of the circuit court

of Will County is reversed, and the cause is remanded for further

proceedings.

     Reversed and remanded.   

     SLATER, J., concurs.

     LYTTON, J., dissents.

                              NO. 3--95--0568

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

D.C.                                ) Appeal from the Circuit

Court

                                    ) of the 12th Judicial

Circuit

     Plaintiff-Appellant,           ) Will County, Illinois

                                    )

     v.                             ) No. 94 L 7473

                                    )   

S.A. and J. A., JR.,                ) Honorable   

                                    ) Herman Haase               

     Defendants-Appellees.          ) Judge, Presiding

                                                                  

                                     

JUSTICE LYTTON dissenting:

                                                                 

     

     I dissent.  Section 10 of the Mental Health and

Developmental Disabilities Act (Mental Health Act) (740 ILCS

110/10 (West 1992)) provides that a recipient of mental health

services has a privilege to refuse to disclose and to prevent the

disclosure of his records and communications, except where the

recipient introduces his condition as an element of his claim or

defense.  The majority treats this privilege as absolute and

concludes that plaintiff's records are privileged even though

they may indicate that the incident which gave rise to the

lawsuit could have been caused by plaintiff's failed attempt to

commit suicide.  I cannot agree.

     "The cardinal rule of statutory construction is to give

effect to the language and intent of the legislature.  * * * In

considering legislative intent, courts 'must presume that the

legislature did not intend absurdity, inconvenience or injustice,

and select an interpretation of the statute which leads to

logical results and avoids that which would be absurd.'"  People

v. Acevedo, 275 Ill. App. 3d 420, 425-26, 656 N.E.2d 118, 122-23

(1995), quoting People v. Liberman, 228 Ill. App. 3d 639, 647,

592 N.E.2d 575, 581 (1992).  "Moreover, a court may properly

consider not only the language used in the statute but also the

reason and necessity for the law, the evil sought to be remedied,

and the purpose to be achieved."  Acevedo, 275 Ill. App. 3d at

425, 656 N.E.2d at 122-23.

     Section 10 of the Mental Health Act serves the noble purpose

of protecting the confidential records and communications of

mental health patients.  Unfortunately, today the majority has

invited the legislature to narrow the parameters of section 10:

     "The result in this case may be perceived in some

     quarters as an affront to justice and common sense * *

     * our holding is compelled by the plain language of

     section 10 of the Mental Health Act * * *."

While I agree that the majority has reached a result that is "an

affront to justice and common sense," I do not agree that this

result was "compelled" by the language of the statute.

     By their very nature, privileges inhibit the fact-finding

process.  Nevertheless, they serve other important functions,

such as protecting interests and relationships regarded to be of

"sufficient social importance to justify some sacrifice of

availability of evidence relevant to the administration of

justice."  1 J. Strong, McCormick on Evidence §72, at 269 (4th

ed. 1992).

     Yet, no privilege is absolute.  Even the attorney-client

privilege -- one of the oldest privileges of confidentiality known

to the common law, often described as essential to the functioning

of the adversary system -- is inapplicable where a client seeks or

obtains the services of an attorney in furtherance of criminal or

fraudulent activities.  In re Marriage of Decker, 153 Ill. 2d 298,

312-13, 606 N.E.2d 1094, 1101 (1992).  Recently, while recognizing

the psychotherapist privilege for litigation in federal courts, the

United States Supreme Court indicated that there are "limits on

confidentiality" (Jaffee v. Redmond, ___ U.S.  ___, ___, ___ L. Ed.

2d  ___, ___, ___ S. Ct. ___, ___ (1996)) and "situations in which

the privilege must give way"  (Jaffee, ___ U.S. at ___, ___ L. Ed.

2d at ___, ___ S.Ct. at ___).    

     This case presents one situation where the principles of due

process and fundamental fairness mandate that the privilege must

give way.  Since plaintiff's records may reveal that this lawsuit

could be a fraudulent scheme to profit from plaintiff's own failed

suicide attempt, I believe that such information must be revealed

even though it might otherwise be deemed confidential.

     In Prink v. Rockefeller Center, Inc., 48 N.Y.2d 309, 398

N.E.2d 517, 422 N.Y.S.2d 911 (1979), Robert Prink fell from his

thirty-sixth floor office, and his widow filed suit alleging that

the building's owners and architects were negligent in the design

and installation of an window alcove desk.  The death certificate

noted that, according to Prink's psychiatrist, decedent had been

tense and depressed.  The court of appeals concluded that under

such circumstances, the unfairness of permitting the plaintiff to

succeed by hiding behind the privilege could not be tolerated.  "To

hold otherwise is to ignore the realities of the factual situation

and to come perilously close to a taking of defendants' property

without due process of law."  Prink, 48 N.Y.2d at 317, 398 N.E.2d

at 517, 422 N.Y.S.2d at 916.

     The majority ignores these concerns, instead holding that

"[i]t is for the legislature, and not the courts, to determine

whether the Mental Health Act has tilted the balance * * *."  I

cannot believe that the absurd outcome of this appeal reflects the

intent of the Illinois legislature.  But, even assuming that the

legislature intended these results, I do not believe that the

judiciary can so easily wash its hands of responsibility. 

Certainly, civil defendants are entitled to due process before

their property is taken (U.S. Const., amend XIV; Ill. Const. 1970,

art. 1, §2) and the right to find remedies and justice in the law

(Ill. Const. 1970, art. 1, §12).

     This is a landmark case.  The majority departs from the

longstanding practice of the courts of prohibiting litigants from

using the "shield" of a privilege as a "sword" against opponents. 

See United States v. Rylander, 460 U.S. 752, 758, 75 L. Ed. 2d 521,

529, 103 S. Ct. 1548, ____, (1983) (privilege against self-

incrimination is not a sword); MacGreal v. Taylor, 167 U.S. 688,

701, 42 L. Ed. 326, 333, ___ S. Ct. ___, ___ (1897) (privilege of

infancy is intended to be used "simply as a shield to protect" and

not "a sword to be used to the injury of others").  This is not a

situation wherein the courts are deferring to the legislature's

determination to merely shield certain information from involuntary

disclosure.  Here, the majority may be allowing plaintiff to abuse

the psychotherapist-patient privilege by using it as a sword

against the defendants.

     Unless the majority's decision is reversed by a higher court,

the judicial system may unwittingly become a co-participant in

plaintiff's apparent scheme to harass and defraud the defendants. 

I cannot concur in such a result.