Julius A. Hellenbrand, J.
Defendants, father and son, are charged in the indictment with kidnapping in the first degree, rape in the first degree, and the lesser included sexual offenses.
It is alleged that the crime took place August 22, 1974.
Defendants move to suppress certain personal property consisting of notes or written or typed memoranda that were removed from a cabinet in the bedroom of an apartment and turned over to the District Attorney upon the ground that their constitutional rights have been violated.
A hearing was held and the court finds the facts to be as follows: Prior to November 14, 1975, defendant DeVernon LeGrand and his wife, Kathleen LeGrand, together with two children and other members of their "family”, which included other numerous children, resided at 222 Brooklyn Avenue, Brooklyn, New York.
On November 14, 1975, at about 1:30 p.m., the wife of defendant, DeVernon LeGrand, called the office of the District Attorney of Kings County and spoke to Henry Sobel, an Assistant District Attorney in charge of the Major Offense Bureau. She advised him of her desire to talk to him about the defendant, DeVernon LeGrand. The District Attorney made the necessary arrangements to meet with her at the office. The conversation they had and the information he received from her were substantially as follows: The wife, Kathleen LeGrand, indicated that she wanted to leave her husband and the marital residence; was concerned about the safety of herself and her two children, and if her husband learned that she contemplated leaving him, the children would be held as hostages.
During this conversation she explained that her husband was preparing a false and perjurious defense in this case in which he was about to proceed to trial; that she had typed various transcripts or memoranda concerning prepared false testimony, as well as transcripts in question and answer form for the witnesses in two previous cases in which her husband, as a defendant, also procured false testimony. She said that certain witnesses were about to perjure themselves; that her husband, sitting in a large room with various witnesses, arranged for mock trials from a script, with persons acting out roles as Judge and lawyer; that stories were constructed and made up falsely, and that she typed the transcripts which were rehearsed. Other discussions were had relative to or *987 concerning the two prior criminal cases in which her husband appeared as a defendant. The District Attorney was also told that her husband drank on Friday nights (this was a Friday night) and that some of his children carry guns.
Mrs. LeGrand informed the District Attorney that these notes or memoranda were kept in a cabinet in their bedroom and that on at least 20 or 25 occasions she had taken these notes out for use during the rehearsal periods and then returned them to the cabinet in the bedroom. The cabinet was not locked. Her husband and defendant Nocanda LeGrand were present at these mock trials or rehearsals.
Mrs. LeGrand stated that she wanted possession of her papers, her clothing, her children, and wanted to return to her house to obtain them. She requested police protection in doing so.
On the evening of the same day, at about 6:30 p.m., Mrs. LeGrand returned to 222 Brooklyn Avenue, the marital residence, accompanied by five detective investigators from the office of the District Attorney, and present at the scene or in the vicinity was a total of 29 law-enforcement officers. They had no search warrant.
Mrs. LeGrand entered the house accompanied by the detective investigators and went directly to the bedroom on the second floor. She entered the bedroom, took her fur coat from a cabinet or a closet, took other articles of personal property including clothing for the children, and removed several files. Eight manila folders containing the papers which are the subject of this motion were placed by her on her bed, and with her consent one of the men from the District Attorney’s office picked them up and carried them out of the house when they all left. Mrs. LeGrand voluntarily turned over the folders and papers to the District Attorney.
Without enumerating these papers in detail, it is sufficient to state that they contained the names of potential witnesses to be called by the defendants on the trial of the present indictment; names, notes and memoranda of various witnesses and transcripts of testimony concerning not only the present case but two previous cases. The notes, most of which were typed in triplicate, bear handwritten notations or comments on the evidence intended to be adduced upon the trial of this indictment.
Defendants contend that the notes, paper and memoranda in the custody of the District Attorney are the product of *988 unlawful search and seizure. On the other hand, the People contend that they did not conduct a search and that these notes, papers, and memoranda belong to Kathleen LeGrand and are as much her property as that of her husband. The People argue that since the papers were jointly owned or possessed, the wife was equally entitled to retrieve them; to keep them and place them in the care of the District Attorney for safeguarding by and for the use of the People as they deem fit and proper.
The court finds, based upon the credible evidence, that the property removed by the wife, specifically the notes, memoranda or transcripts concerned with this case and defendants’ prior cases, was joint property, much of which was typed and prepared by the wife and used jointly by husband and wife in a matter in which they had an interest. Both husband and wife had joint control and access to the marital residence and to the bedroom and cabinet which they both shared. Both had knowledge as to where the papers were kept. The cabinet and bedroom were not under the control solely of the husband but were jointly used and controlled. Further, the papers, notes and memoranda were used by the husband and wife in concert with others in the preparation and rehearsal of witnesses for the expected proffered testimony in the various cases including this one involving the husband.
It is settled that evidence wrongfully seized by a private person is admissible in a State criminal prosecution because neither the Fourth nor the Fourteenth Amendment proscribes private as opposed to governmental activity (People v Horman, 22 NY2d 378, cert den 393 US 1057; People v Williams, 53 Misc 2d 1086; People v Santiago, 53 Misc 2d 264; People v Zalduondo, 58 Misc 2d 326).
In People v Horman (supra, p 382) the court said: "In Burdeau, however and in the case at bar, the evidence was not seized in violation of the Federal Constitution because neither the Fourth nor Fourteenth Amendment proscribes private as opposed to governmental activity. Therefore, since the evidence in this case was seized without the participation or knowledge of any governmental official, it is admissible in a criminal prosecution [citing cases].”
In Horman the court made it clear that the evidence has to be seized by a civilian without the participation or knowledge of any governmental official.
In the instant case the District Attorney’s office — at least *989 five detectives and numerous police officers — had advance knowledge of and participated in an official capacity in aiding Mrs. LeGrand in removing the papers from her apartment. Thus, although rules relating to search and seizure may be applicable (see People v Esposito, 37 NY2d 156) the motion must be denied.
All warrantless searches are deemed unreasonable unless they fall within recognized exceptions, including a search upon voluntary consent (Bumper v North Carolina, 391 US 543; People v Neulist, 43 AD2d 150; Coolidge v New Hampshire, 403 US 443).
It is well established that a wife may lawfully consent to a search of an apartment, dwelling or home which she occupies with her husband, and the consent is binding upon him (United States v Thompson, 421 F2d 373; United States v Matlock, 415 US 164; Maxwell v Stephens, 348 F2d 325, cert den 382 US 944; Roberts v United States, 332 F2d 892; People v Berrios, 28 NY2d 361; Commonwealth v Martin, 358 Mass 282; People v Melvin, 58 Misc 2d 424).
The rule was stated in United States v Thompson (supra, p 375): " 'Where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.’ ”
In Thompson the ruling was, however, limited (p 376) as follows: "Our holding that a wife can consent to a search of the premises she shares with her husband is limited to those premises under mutual control.”
In determining whether a search, consented to by the wife, is lawful, valid and binding upon the husband, the courts have considered two factors: (1) whether the tangible property seized was secreted in a hidden, clandestine, or personal place or area under the exclusive and unchallenged control of the husband (United States v Poole, 307 F Supp 1185; Holzhey v United States, 223 F2d 823; and (2) was the consent of the wife freely and voluntarily given (Pekar v United States, 315 F2d 319; United States v Viale, 312 F2d 595; United States v Smith, 308 F2d 657), without threat, duress or coercion by law enforcement authorities (United States v Thompson, supra; Roberts v United States, 332 F2d 892, 897; United States v Stone, 471 F2d 170, rev on other grounds 411 US 931).
The court finds that the defendant’s wife freely and voluntarily consented to and in fact requested the law enforcement officers to accompany her and be present in the marital *990 residence on the occasion of the recovery of the property, and she was not coerced or maneuvered in any manner by law enforcement authorities. The disclosure which she made to the District Attorney and the police did not violate the marital privilege, but was in fact an exception to the privilege (People v Scull, 37 NY2d 833). These disclosures which she made to the District Attorney imposed upon him a duty to act. Such disclosures constituted probable cause to arrest the defendant, based on a reasonable belief that he had committed the crimes of perjury and subornation of perjury (People v Scull, supra).
Defendant makes the further argument that the seizure and possession of the papers violates his Fifth Amendment rights. The Fifth Amendment of our Constitution is essentially concerned with the production of compelled testimony. It guarantees the right of each person to refuse to personally produce any evidence which might incriminate him. A lawful search or seizure does not compel a person to do anything. Similarly, the delivery by a third party of documents to a law enforcement agency does not compel a person to produce anything. All that a search compels a defendant to do is to stand aside while the search ensues. Admitting in evidence properly seized papers and documents does not violate the Fifth Amendment privilege against self incrimination (United States v Beck, 511 F2d 997, 1002).
Defendants’ final contention that their right to a fair trial has been violated by the People by virtue of the knowledge of the names of their potential witnesses and the transcripts for their expected testimony lacks merit (United States v Rosner, 485 F2d 1213; People v Squitieri, 49 AD2d 374). The court finds no evidence whatsoever that the People have intruded upon any confidential lawyer-client communication.
The court concludes that defendants have not sustained their burden of establishing an illegal search and seizure (People v Entrialgo, 19 AD2d 509; People v Lombardi, 18 AD2d 177, affd 13 NY2d 1014).
Accordingly, the motion to suppress is denied.