OPINION OF THE COURT
Robert S. Kreindler, J.
Defendant moves to dismiss the indictment on the ground that the indictment was obtained using information given to police by his spouse in violation of the spousal communication privilege (CPLR 4502 [b]). In the alternative, defendant moves for suppression of evidence seized as a result of the privileged communication. Defendant moves for identical relief on the ground that the indictment was procured with the benefit of information gathered by police in violation of the attorney-client privilege (CPLR 4503).
In deciding the instant motion, the court considered defendant’s moving papers and the People’s responses.
Defendant alleges that while he was a "prime suspect in the disappearance of two women”, the police interviewed his estranged wife and his attorney, who had apparently represented the couple in the purchase of the marital home some years earlier. The information obtained via the interview purportedly provided the police with a "motive” for defendant’s involvement in the disappearance of the two women.
Despite the vague and conclusory nature of defendant’s allegations, the court will assume: (1) that there was a confidential communication which was divulged to the police, and (2) that the information derived from the communication was used by police in its investigation of defendant and subsequent discovery of the homicide victims.
*600 I. PRIVILEGE
Privileges are in essence rules of exclusion. Unlike most exclusionary rules which tend to guard against the admission of evidence of low probative force or of proof calculated to mislead or prejudice, privileges are designed to protect relationships deemed socially desirable (see, People v Melski, 10 NY2d 78, 83; see also, Fisch, New York Evidence § 511 [2d ed]). The maintenance of privileges often causes the exclusion of much valuable evidence. However, the Legislature deems the social benefit derived from the protected relationship to outweigh the harm that results from exclusion (supra; see also, Fisch, New York Evidence § 511 [2d ed]).
The marital privilege developed historically from the common-law rule which completely disqualified a wife from testifying for or against her husband. She was held to be incompetent because spouses were considered as a single entity and, therefore, interested in the outcome of the litigation in which the other spouse was a direct party. At common law, interested witnesses were deemed disqualified from testifying (see, Croker v New York Trust Co., 245 NY 17, 20). The privilege was also deemed necessary to avoid subjecting domestic tranquility to the disturbance which was thought to flow from a spouse giving adverse testimony against the other (People v Rodriguez, 38 NY2d 95, 99, citing 1 Coke, Commentary upon Littleton § 6b [19th ed 1832]; 2 Kent’s Commentaries 179).

CPLR 4502

CPLR 4502 (b) reads as follows: "(b) Confidential communication privileged. A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.”
The underlying rationale for the creation of the marital privilege by the Legislature as codified today was: (1) to encourage husbands and wives to share confidences by the assurance that they would not be divulged in legal proceedings (see, Poppe v Poppe, 3 NY2d 312, People v Daghita, 299 NY 194), and (2) to avoid the "feeling of indelicacy and want of decorum” (Prink v Rockefeller Ctr., 48 NY2d 309, 318) that would arise from requiring a person to condemn or be condemned by his or her spouse, or for prying into the secrets of the marital relation (see, Prink v Rockefeller Ctr., 48 NY2d, at *601 318, supra; see also, Richardson, Evidence § 447 [Prince 10th ed]; 8 Wigmore, Evidence § 2228 [McNaughton rev ed]).

(a) Spousal Privilege Outside Trial

In People v Scull (37 NY2d 833), defendant’s spouse summoned the police to the marital residence where she showed the officers a shotgun and some marihuana she claimed belonged to defendant. When defendant returned to the apartment, the police arrested him and a search of his person yielded a vial of LSD.
The Court found that the disclosure by defendant’s wife was not privileged, but even if privileged, relates to "testimonial privilege and not a universal 'gag’ rule” (People v Scull, 37 NY2d, at 834, supra). The Court, in dicta, held that spousal privilege relates to testimony, not to communications between spouses occurring in a nontestimonial setting.
In People v Kemp (59 AD2d 414), the police responded to a domestic violence call and were led to the couple’s apartment by defendant’s wife. Defendant’s wife then removed drug cutting equipment and some marihuana and gave it to police. Upon the police placing defendant under arrest, he surrendered several packets of cocaine. A search of the apartment by police resulted in the seizure of gambling slips.
Applying the Court’s holding in Scull (supra), the Court held that the marital privilege did not apply to a suppression hearing or to a wife’s disclosure of physical evidence to police (supra, at 421). This was so even though the wife could be barred at trial from so testifying to privileged communications.
The Court found that the "[marital] privilege is testimonial, obtaining full impact at trial” and would be inappropriately applied in the context of a suppression hearing (People v Kemp, 59 AD2d, at 420, supra). The Court noted that the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before a Judge to determine the admissibility of evidence (supra, at 419-420, citing Brinegar v United States, 338 US 160). " '|T]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals’ ” (People v Kemp, 59 AD2d, at 421, supra, citing Coolidge v New Hampshire, 403 US 443, 488).
Several trial courts in New York have found the marital *602 privilege inapplicable outside of the trial context (People v LeGrand, 84 Misc 2d 985; People v Helmus, 50 Misc 2d 47; see also, People v Andreas, NYLJ, July 20, 1987, at 15, col 6).
The Federal courts have held that statements of a spouse that would be privileged at trial can nonetheless be used to establish probable cause to obtain a search warrant or investigate a suspect based upon such communications (United States v Cleveland, 477 F2d 310; United States v Harper, 450 F2d 1032; United States v Winfree, 170 F Supp 659). In essence, the Federal courts held that the spousal privilege is applicable in the trial context only and has limited application outside that context (supra; see also, United States v Tsinnijinnie, 601 F2d 1035 [third party permitted at trial to testify to out-of-court utterance of privileged communication of defendant spouse]; State v Burden, 120 Wash 2d 371, 841 P2d 758).
Several State courts outside New York have held that the Fourth Amendment does not bar the use of privileged communications as a basis for a finding of probable cause to search (see, Muetze v State, 73 Wis 2d 117, 243 NW2d 393; see also, State v Kunkel, 137 Wis 2d 172, 404 NW2d 69; State v Bonaparte, 34 Wash App 285, 660 P2d 334; State v Diana, 24 Wash App 908, 604 P2d 1312; State v Osborne, 18 Wash App 318, 569 P2d 1176; State v Crevina, 110 NJ Super 571, 266 A2d 319; State v Schifsky, 243 Minn 533, 69 NW2d 89). These decisions support the principle that there is no Fourth Amendment prohibition against using privileged communication as a basis for a finding of probable cause to search (Muetze v State, 73 Wis 2d 117, 243 NW2d 393, 397, supra).
The purported use of privileged communication in the furtherance of an investigation and/or to obtain probable cause in the case at bar did not violate defendant’s constitutional right to be free from unreasonable search and seizure.

(b) Violation of CPLR 4502 (b)

Assuming the statute governing spousal communication was violated in the case at bar, the question remains as to whether such violation would result in the suppression of the "fruits” of such a search.
The violation of a statute by law enforcement will not necessarily result in suppression of the fruits of such violation (People v Patterson, 78 NY2d 711 [violation of CPL 160.50 does not warrant suppression of identification]; People v Sampson, *603 73 NY2d 908 [violation of Vermont’s "fresh pursuit statute” does not mandate suppression]; People v Harris, 48 NY2d 208, 216 [suppression not warranted where defendant’s statutory rights, as opposed to constitutional rights, were violated]; People v Bialostok, 80 NY2d 738 [violation of CPL 700.50 (3) requiring written notice of wiretap does not necessitate suppression]). It is only where a constitutionally protected right is implicated (e.g., People v Taylor, 73 NY2d 683; People v Gallina, 66 NY2d 52; People v Moselle, 57 NY2d 97) that a violation of a statute warrants suppression (People v Patterson, 78 NY2d, at 715-716, supra). Suppression is appropriate only where a "statutory imperative operates directly to protect and preserve a constitutionally guaranteed right” (People v Patterson, 78 NY2d, at 717, supra). In contrast, the marital privilege does not implicate a constitutionally protected right.* Indeed, as set forth above, the motivation for the enactment of the marital privilege statute was to encourage husbands and wives to share confidences with assurance that they would not be divulged in legal proceedings (Poppe v Poppe, 3 NY2d 312, supra; People v Daghita, 299 NY 194, supra) and to avoid the "feeling of indelicacy and want of decorum” (Prink v Rockefeller Ctr., 48 NY2d 309, 318, supra) that would arise from requiring a person to condemn or be condemned by his or her spouse, or by prying into the marital relation (see, Prink v Rockefeller Ctr., 48 NY2d, at 318, supra; see also, Richardson, Evidence § 447 [Prince 10th ed]; 8 Wigmore, Evidence § 2228 [McNaughton rev ed]). There does not appear to be anything in the legislative history of the marital privilege to indicate that its enactment was premised upon constitutional underpinnings or intended to bar law enforcement from investigating criminal acts.
Defendant’s motion to dismiss the indictment or, in the alternative, to suppress physical evidence on the ground of a violation of the marital privilege is denied.
*604 II. ATTORNEY-CLIENT PRIVILEGE
Defendant also moves for dismissal of the indictment or alternatively for suppression of evidence seized as a result of statements made to police by his former attorney in violation of the attorney-client privilege.
The attorney-client privilege is codified by CPLR 4503 (a) and enables one seeking legal advice to communicate with counsel secure in the knowledge that the contents of the exchange will not later be disclosed against the wishes of the client (People v Osorio, 75 NY2d 80, 84). The privilege belongs to the client and attaches if the information is disclosed "in confidence to the attorney for the purpose of obtaining legal advice or services” (supra) (emphasis added).
The privilege protects from disclosure the subject of the communication but not the demeanor, mental capacity or physical characteristics of the client (People v Kinder, 126 AD2d 60). The client must consult the attorney as an attorney and not as a friend or to engage him in nonlegal matters (People v O’Connor, 85 AD2d, at 95, supra). Even where the "technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure” (Matter of Priest v Hennessey, 51 NY2d, at 69; see also, Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 592).
The burden of proving each element of the privilege rests upon the party asserting it (People v Osorio, 75 NY2d, at 85, supra; People v O’Connor, 85 AD2d 92, 95, supra). In the matter at bar, the conclusory allegations set forth by defendant that his attorney "gave information relating to [defendant’s] state of mind and financial condition,” without more, are wholly inadequate to meet defendant’s burden of proving each element of the privilege. The papers fail to show that "state of mind” or "financial condition” are subject to the privilege. They may or may not be privileged, and defendant has failed to fully set forth the relevant circumstances. Moreover, defendant fails to sufficiently establish that an attorney-client relationship existed at the time the communications were allegedly rendered to his attorney, and that the "communications” were made for the purpose of obtaining legal advice or services. There is no indication that the information was not known to third parties, such as banks or the seller of the marital home.
That branch of defendant’s motion seeking to dismiss the *605 indictment or suppress evidence based upon a violation of the attorney-client privilege is denied.
Since defendant has not made a prima facie showing of a violation of the attorney-client privilege, there is no need to address the question of whether the privilege applies to extrajudicial violations of same and whether such violations would necessitate suppression of evidence obtained thereby.

 In determining that suppression is not appropriate where the evidence is obtained in violation of CPLR 4502, the court is not unmindful of the body of cases holding that the "private realm of family life” has been given, in some instances, "constitutional dimension” (see, Matter of A & M, 61 AD2d 426, 429-430, citing Prince v Massachusetts, 321 US 158, 166; also citing Cleveland Bd. of Educ. v La Fleur, 414 US 632; Meyer v Nebraska, 262 US 390; Pierce v Society of Sisters, 268 US 510; Roe v Wade, 410 US 113; Wisconsin v Yoder, 406 US 205; Griswold v Connecticut, 381 US 479).
However, in the absence of authority holding that New York’s marital privilege statute, as codified, has been given constitutional dimension, this court declines to so find.