OPINION OF THE COURT
Frank J. Barbaro, J.
There are two motions before this court. First, defendant has moved for a mistrial on the ground that the prosecution failed to disclose police personnel records and Civilian Complaint Review Board (CCRB) files relating to the detective who allegedly coerced defendant into confessing. Second, defendant has applied for the issuance of judicial subpoenas for the records.
These motions present a most troubling issue which impacts directly on an issue of criminal justice public policy. The court cannot conceive that it was the intent of the Legislature or the Court of Appeals to allow prosecutors who are in possession of possibly important impeachment material to use Civil Rights Law § 50-a and People v Gissendanner (48 NY2d 543) to establish themselves as arbiters of whether they are justified in failing to disclose it, and thus deny the courts the opportunity to perform their function in deciding whether the material should be discoverable. This result would deny a defendant, who is ordinarily unaware that this material exists, of his or her US Constitution Sixth Amendment right to meaningfully cross-examine a witness.
FACTS
Defendant, Frank Oglesby, is currently on trial on charges of murder in the second degree and related weapon offenses aris *582 ing from the February 26, 1996 shooting of Thomas Chisolm. Defendant was arrested in the early morning of April 9, 1996, while driving a vehicle which had been stolen in an unrelated robbery. Around 3:50 p.m. on April 9, defendant was identified in a lineup as the perpetrator of the robbery and, half an hour later, he confessed his involvement in the robbery to a detective. Later that evening, defendant confessed his involvement in the homicide to the same detective. The voluntariness of all of the alleged confessions is hotly disputed by defendant, who alleges that the detective and his partner physically coerced him into confessing.
The detective’s trial testimony concerning the circumstances surrounding defendant’s confessions is consistent with his testimony at the Huntley hearing, which is described in detail in my May 12, 1998 opinion denying defendant’s motion to suppress the statements as involuntary. For purposes of this opinion, it is sufficient to note that the initial confession to the homicide was made to the detective alone and that defendant’s claim of involuntariness is not patently meritless. While defendant did not adduce any evidence to support this contention at the Huntley hearing, the trial record reflects that defendant received a laceration over his right eyebrow on April 10, 1996. Portions of his head above his eyebrow were covered with a bandana during his videotaped confession. Only the arresting officer and the detective testified that they had seen the bandana prior to defendant’s initial confession to the homicide, and the arresting officer’s hearing testimony concerning the bandana was incredible.
During his cross-examination of the detective, defense counsel accused him of coercing the defendant to confess through physical assaults and threats. Defense counsel also questioned the detective about his statements to the CCRB, which had investigated the cause of defendant’s head injuries in response to defendant’s complaints.
In response to this questioning, the Assistant District Attorney (ADA), who was given responsibility for this case on the eve of trial, reviewed the CCRB file concerning the incident. He found over 200 pages of CCRB documents which had been in the possession of the District Attorney’s Office well prior to the start of trial. The ADA, acting responsibly and concerned that defendant’s statements to the CCRB might be deemed discoverable under CPL 240.20 (1) (a), brought the documents to the court’s attention and agreed to permit the defense counsel to review the CCRB materials.
*583 In the course of reviewing these CCRB materials, defense counsel found reference to prior CCRB investigations relating to the detective. When asked about these CCRB activities, the ADA candidly conceded that the detective had previously been investigated on charges of physically assaulting suspects and that “one or two” of the charges were sustained. Defense counsel immediately moved for a mistrial. Defense counsel subsequently applied to the court for judicial subpoenas for CCRB files and police personnel records relating to these incidents.
For the reasons stated below, the motion for a mistrial was denied, but the judicial subpoenas were issued with resulting delays in the trial. Having now reviewed the subpoenaed documents in camera, the court finds that the documents are not relevant and material and need not be made available to the defendant.
DISCUSSION
Although ours is an adversarial system, the People have a greater duty than the ordinary adversary. The responsibility of a prosecutor differs from that of the usual advocate in that his or her duty is to seek justice, not merely to convict. (Code of Professional Responsibility EC 7-13.) “[T]he prosecutor should make timely disclosure to the defense of available evidence, known to him [or her], that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment. Further, a prosecutor should not intentionally avoid pursuit of evidence merely because he [or she] believes it will damage the prosecutor’s case or aid the accused.” (Ibid.) Although individual prosecutors may benefit from winning every case they try, the People are not well served if such victories undermine our system of justice and elemental fairness, crucial elements of a democratic society.
While the prosecution does not have any responsibility to prepare the defendant’s case and must be mindful of the State’s interests in the confidentiality of police personnel records, the People have an affirmative duty under certain circumstances to disclose evidence of police misconduct to the defense. Brady v Maryland (373 US 83) requires the prosecution to turn over evidence in its possession which is both favorable to the defense and material to either guilt or punishment. (See, People v Vilardi, 76 NY2d 67, 73.) This obligation exists whether or not the prosecutor actually knows of the favorable information so long as the information is known to police or others acting on *584 the prosecutor’s behalf. (People v Simmons, 36 NY2d 126, 131; People v Vasquez, 214 AD2d 93, 99.) This duty arises out of considerations of elemental fairness to the defendant and as a matter of professional responsibility. (Supra.) Failure to disclose Brady material violates a defendant’s constitutional right to due process.
When the reliability of a given witness may well be determinative of guilt or innocence, important evidence affecting credibility may constitute Brady material. (People v Shakur, 169 Misc 2d 961, 973, citing Giglio v United States, 405 US 150, 154.) This is true when the impeachment material relates directly to the witness’s veracity on matters about which he or she has testified at trial. (Supra.) For example, if a witness has been offered some benefit for testifying at trial (see, e.g., Giglio v United States, supra; People v Steadman, 82 NY2d 1; People v Cwikla, 46 NY2d 434), or if the complainant’s status as a police informant would provide a police officer a motive to corroborate the complainant’s testimony (People v Wright, 86 NY2d 591), the prosecutor has an obligation under Brady (supra) to disclose this information. In contrast, evidence which would only impeach the witness’s general credibility is usually not “material”, and does not rise to the level of Brady material. Although a specific request for the exculpatory evidence is not required under Brady, New York’s two-tiered framework for determining whether information is “material” turns on the nature of the defendant’s request. Evidence specifically requested by the defense is material if it might affect the outcome of trial. (People v Vilardi, 76 NY2d, supra, at 73.) On the other hand, in cases where only a general request for exculpatory material has been made, the prosecution’s duty to disclose arises from the notice provided by the very nature of the evidence. The evidence is material only if it “ ‘create[s] a reasonable doubt that did not otherwise exist.’ ” (Supra, at 73.)
The prosecution in this case did not have any obligation under Brady (supra) to disclose the information relating to the detective’s prior misconduct. Defendant made only a general request for Brady material, and the information did not create a reasonable doubt that did not otherwise exist. Rather, the information was general impeachment material of the sort that might potentially provide fodder for cross-examination on credibility issues but was not material to issues of guilt or innocence.
The same considerations of elemental fairness which underlie Brady (supra) also underlie People v Rosario (9 NY2d *585 286) and CPL 240.45. The Rosario rule, which requires that the defense, on request, be provided with any prior statements made by a prosecution witness which relate to the subject matter of the witness’s testimony, is a judicially created doctrine designed to enhance the fairness of criminal proceedings. In 1979, the Legislature enacted CPL 240.45 (L 1979, ch 412), which expanded discovery beyond the confines of the judicial doctrine by, inter alia, requiring that the People disclose any knowledge they might have of convictions or pending criminal actions against witnesses they intend to call at trial (CPL 240.45 [1] [b], [c]).
The letter of CPL 240.45 (1) (b) and (c) was not violated in this case. The CCRB’s determination that a civilian complaint is substantiated is not a criminal conviction; CCRB proceedings are, at most, quasi-criminal. There is nothing to suggest that the substantiated charges gave rise to a criminal action. Construing the unambiguous terms of the statute strictly, this court cannot find that the prosecution violated any disclosure obligations under CPL 240.45. Since the prosecution did not breach any common law or statutory duty to disclose the record of the detective’s misconduct, this court has denied defendant’s motion for a mistrial.
Still, this court is deeply troubled by the apparent violation of the spirit of CPL 240.45. “The legislative history of CPL 240.45 indicates that it was designed to reduce the element of surprise, with its inherent unfairness, in criminal trials, as well as to broaden discovery * * * The statute demands fair play by both the prosecution and the defense” (People v Fishman, 72 NY2d 884, 887 [Titone, J., dissenting]). Especially in the context of a homicide prosecution in which the most damaging evidence was defendant’s own confessions, in which the voluntariness of the confessions was a central issue, and in which the voluntariness issue turned in large part on the credibility of the detective who took the initial confession, it was not “fair play” for the prosecution to fail to disclose at least that the CCRB had substantiated allegations of misconduct. The prosecution must not be unmindful of the fact that the law has constructed effective shields to disclosure of information relating to police misconduct (see, e.g., Civil Rights Law § 50-a). These shields were deemed appropriate to prevent litigants from engaging in “fishing expeditions” into police personnel records and to protect confidentiality. They were not enacted to be used as a sword, allowing the prosecution, which has ample resources to discover prior bad acts on the part of defense wit *586 nesses, to refuse to disclose evidence of prior bad acts on the part of its own witnesses.
What especially troubles this court is that reliance on the protections of Civil Rights Law § 50-a and cases like People v Gissendanner (48 NY2d 543, supra), which holds that it is not an abuse of discretion for a court to deny discovery of police personnel records unless defendant can establish a factual predicate which would make it reasonably likely that such files would contain relevant material, may result in an injustice. The criminal justice system cannot ignore the sad fact that police misconduct does sometimes occur. Indeed, the very week in which this issue arose, the New York Times reported two instances in which convictions were reversed as a result of coerced confessions. (See, A Conviction Ruled Unjust Leads to a Redemption, NY Times, May 29, 1998, at Bl, col 2; Conviction Set Aside, but in Prison for Life, NY Times, May 30, 1998, at Al, col 2.) The only clue that such misconduct has occurred may appear in the offending officer’s personnel file. One would be hard-pressed to argue that, while the court may properly use its discretion to bar a “fishing expedition”, it would be appropriate to countenance a prosecutor sitting on evidence rather than allowing a judicial determination of whether such evidence is discoverable. If the prosecution is to be privileged to resist production of personnel documents, that privilege must give rise to the correlative responsibility of reviewing the personnel records and CCRB files actually in the prosecution’s possession and requesting in camera inspection of any documents relating to sustained allegations of misconduct similar to the misconduct alleged by the defendant.
This is not to say that the prosecution has any affirmative obligation to produce material itself. Even if the information were, in fact, Rosario material, the prosecution could assert claims of confidentiality with respect to the material under Civil Rights Law § 50-a. The trial court would then exercise its discretion pursuant to People v Gissendanner (48 NY2d 543, supra), balancing the constitutionally based rights of the accused to confront and cross-examine adverse witnesses on the one hand and the interest of the State in maintaining confidential data relating to the performance and discipline of the police on the other.
It is important to note that under Gissendanner (supra), discretion as to whether or not to order disclosure is vested in the trial court. By failing to disclose to the court the evidence of misconduct which the prosecution had in its possession, the *587 prosecution in this case usurped that discretion. Defendant filed a demand for discovery pursuant to CPL 240.20 requesting, inter alia, “any information concerning any law enforcement officer involved in the investigation or prosecution of this case who has been cited for any type of misconduct including, but not limited to, any violation of Police Department regulations and civilian complaints resulting from disciplinary actions of any kind.” The defendant simultaneously filed a motion to compel discovery pursuant to CPL 240.40 (1) (c). The prosecution responded with boilerplate, pointing out that the motion to compel was premature, but proceeding to address the merits of the motion by arguing that defendant had failed to meet his burden under CPL 240.40 (1) (c) of showing materiality. The prosecution failed, however, to disclose to the court that defendant had in fact filed a complaint with the Civilian Complaint Review Board and that the CCRB records reflected that a prior civilian complaint alleging violence by this officer had been substantiated. Even though this information was later disclosed, this regrettable oversight resulted in two days of delay which negatively impacted everyone — the court, the parties and the jurors alike — for no good reason.
In exercising its discretion under Gissendanner, a court must consider whether the defendant has put forth in good faith some factual predicate which would make it reasonably likely the requested files will bear relevant material and that the request for their contents is “not merely a desperate grasping at a straw.” (People v Gissendanner, 48 NY2d, supra, at 550.) When prior bad acts contained in disciplinary or personnel records bear peculiar relevance to the circumstances of the defendant’s case, disclosure is required. (See, e.g., People v Puglisi, 44 NY2d 748, 750 [error for the court in a narcotics case to deny disclosure of information from the disciplinary records of the undercover officer concerning previous mishandling of undercover “buys”]; People v Vasquez, 49 AD2d 590, 591 [trial court in a narcotics case should have reviewed in camera the personnel records of a police officer who was subsequently convicted of “shaking down” narcotics dealers].) But how is defense counsel in this case to learn that there existed evidence that had “peculiar relevance” since the prosecution gave no indication whatsoever of possessing relevant material? By the same token, how can the court make that same assessment when it is denied the necessary information?
Fortuitously, in this case, the defendant learned of the prior misconduct and made a clear showing that it was reason *588 ably likely that the CCRB files and police personnel records relating to the civilian complaints would contain relevant material. Defendant pointed out that the substantiated complaint concerned charges of property damage, suggesting that the detective might have engaged in unlawful acts to further an investigation. Since the crux of defendant’s argument in this case is that the detective used unlawful means to obtain a confession, information concerning prior similar misconduct would be highly relevant. Moreover, the unsubstantiated allegations charged the detective with physical assault which, if sufficiently similar to the assaults alleged herein, might show the detective’s propensity for violence. Accordingly, the court granted defendant’s application for judicial subpoenas for the CCRB files relating to the incidents and police personnel records relating to the detective.
The subpoenaed documents have been received and reviewed by the court in camera. With respect to the CCRB documents, the court has reviewed a faxed copy of the file of the only substantiated complaint and has had pertinent parts of the files relating to the two unsubstantiated complaints read to the court over the telephone. In addition, with respect to the police records, the court has reviewed a faxed copy of the Internal Affairs file relating to the detective and has viewed pertinent portions of the detective’s personnel file. Based on that in camera inspection, this court is satisfied that the subpoenaed information is not relevant and material to this case, and need not be disclosed. (See, Civil Rights Law § 50-a [3]; see also, Spadaro v Balesteri, 237 AD2d 507.) In so ruling, this court is struck by the irony that such records, which are not discoverable by a defendant facing life imprisonment, would likely be discoverable in a Federal civil lawsuit pursuant to 42 USC § 1983, since Federal courts have declined to enforce provisions of the New York Civil Rights Law which conflict with Federal provisions allowing broad discovery in civil cases. (See, e.g., King v Conde, 121 FRD 180, 187.) Since this court is bound to follow New York law, any action to remedy this apparent inequity must await future legislative or judicial action.
CONCLUSION
For the reasons stated above, defendant’s motion for a mistrial is denied. This court has granted defendant’s application for judicial subpoenas but, upon in camera review of the *589 requested CCRB files and police personnel records, finds that this information is not relevant and material to the action and therefore need not be disclosed.