OPINION OF THE COURT
Robert M. Raciti, J.
Defendant is charged with unlawful solicitation of ground transportation at an airport, pursuant to Vehicle and Traffic Law § 1220-b. His bench trial was conducted before this Court, commencing on January 24, 2001. At the close of the People’s case, defendant moved for a trial order of dismissal, alleging that one or more elements of the alleged crime had not been *171 proved by legally sufficient evidence. (CPL 290.10, 70.10.) Decision on that motion was reserved by the Court. At the conclusion of all of the evidence, the defense renewed its motion to dismiss. A briefing schedule was set and both sides submitted briefs addressing the legal issues of concern to the Court.
Vehicle and Traffic Law § 1220-b (1) provides:
“No person shall unlawfully solicit ground transportation services at an airport. A person unlawfully solicits ground transportation services at an airport, when, at an airport, such person, without being authorized to do so by the airport operator, or without having made a prior agreement to provide ground transportation services to a specific patron, engages or offers to engage in any business, trade or commercial transaction involving the rendering to another person of any ground transportation services from such airport.”
Vehicle and Traffic Law § 1220-b became effective on November 1, 1994, pursuant to chapter 313, § 3 of the Laws of 1994. The laudable object of this legislation was to control “unregulated” airport “hustlers” who solicit airport passengers with offers of transportation, and then charge exorbitant rates and engage in other unsavory business practices. (See letter of K. Bennett, State of NY Dept of Motor Vehicles, to Counsel to Governor, July 15, 1994, Bill Jacket, L 1994, ch 313.) Deserving of special protection in this matter are the especially vulnerable tourists who might be unaware that legitimate and regulated ground transportation is also available. (See letter of C. Shulman, President, Borough of Queens, July 15, 1994, Bill Jacket, L 1994, ch 313.)
As written, the statute does not single out any particular form of prohibited solicitation of ground transportation. Rather, it employs intentionally broad language — “engages or offers to engage in any business” — so as to forbid not just hawking and hustling activities, but any manner of sale of ground transportation at the airport by an unauthorized vendor. That said, it must also be noted that the two prominent exceptions that help define unlawful solicitation draw breath from this same broad-based perspective. As such, a natural reading of the first exception seems to remove from the scope of section 1220-b any form of ground transportation solicitation if in fact the operator is “authorized” by the Port Authority to provide ground transportation at the airport. In other words, the statute itself does not forbid hawking of services by an authorized *172 service provider. This reading is consistent with the apparent legislative intent to regularize the sale of ground transportation services through a vendor authorization system, and is commanded by the statute’s deliberate failure to identify any particular forms of solicitation that are prohibited. It can only be assumed that regulation of the particular conduct of authorized ground transportation providers is accomplished by internal regulations or contractual agreement.
The People, however, submit that “no person shall solicit ground, transportation services.” In support of that position, they do not directly rely upon Vehicle and Traffic Law § 1220-b, but instead attempt to incorporate by reference into that statute a portion of the Port Authority Rules and Regulations that provides:
“No person shall, in any area or any other appurtenance of an air terminal which said person does not occupy pursuant to a lease, license, or permit with or from the Port Authority, conduct any business or trade including the sale, or offer of sale, or any merchandise or service.”
In the first place, it appears that the very general language of this portion of the regulations pertains to all airport merchants, including ground transportation providers. In any event, this agency regulation is not specifically incorporated into Vehicle and Traffic Law § 1220-b, and therefore certainly could not expand its criminal scope (see People v Gottlieb, 36 NY2d 629, 631). Moreover, its citation merely begs the question before the Court since it is applicable only to merchants who are without a “permit” to do business at the airport — the very point at issue in this case.
The second statutory exception picks up where the first ends. It permits privately prearranged pickup and drop-off at the airport by companies or individuals who are not otherwise authorized to do business there. The exception focuses on the prearranged nature of the permitted activity by specifying that it applies only where a “specific patron” has made “a prior agreement” with a particular livery service or individual. It is with respect to this exception that the People can correctly contend that an unauthorized ground transportation provider may never hawk ground transportation services at the airport. That is so because even if an otherwise unauthorized provider has made a prearranged agreement with a particular customer, the provider cannot in turn solicit additional or substitute customers at the airport, since no preagreement would have existed with respect to those patrons.
*173 The Court agrees with defendant that the People have the burden to allege and prove at trial the nonapplicability of the first exception. In People v Kohut (30 NY2d 183, 188), the Court of Appeals held that where the “defining statute contains an exception, the indictment must allege that the crime is not within the exception.” Following that rule, where the exception is spelled out as a material part of an offense, appellate courts have placed upon the People the burden of pleading and proof (see, e.g., People v Kirkham, 273 AD2d 509 [labor dispute exception is an element of criminal contempt]; People v Best, 132 AD2d 773 [burden of proving gun is possessed outside of one’s home or business rests with the People]).
That the People carry this burden in this case is clear since the exception is not only contained within Vehicle and Traffic Law § 1220-b, but woven into its definitional fabric. Moreover, the People’s burden in this regard is a reasonable one. The Port Authority presumably maintains records of which ground transportation providers are authorized to do business at the airport on any particular day. Therefore, the People’s burden of proving that neither a defendant nor his employer were so authorized on the day in question does not seem unduly burdensome. On the other hand, a defendant employed by a livery service may not be aware of his employer’s contractual status with the Port Authority.
The second “exception” is likewise contained within the statute, and it is reasonable to construe it as a matter that the People also must plead and prove (People v Taylor, 256 AD2d 647, 648). In fact, the People typically do so by adducing proof that a police officer overheard the defendant hawking ground transportation services to apparent strangers. Of course, if despite these appearances a preagreement somehow did exist with the particular patron thus solicited, the agreement by its very nature would be within the exclusive knowledge of the defendant, and consequently, defendant would have the burden of rebutting the People’s proof at trial with that evidence (People v Taylor, 256 AD2d 647).
Turning now to the motion before the Court, it should be noted that in deciding a motion for a trial order of dismissal under CPL 290.10, the trial court must limit its review solely to the legal sufficiency of the evidence as defined in CPL 70.10 (1). In doing so, the court must view the evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620; People v Goggins, 217 AD2d 708).
In the present trial, the People relied upon the testimony of a single witness, Police Officer Tourloutis, who had been polic *174 ing JFK Airport for approximately eight years. Tourloukis testified that he was only a few feet away when he heard defendant offer two male airport travelers transportation to Washington Heights for $25. On the issue of whether defendant was authorized to provide ground transportation at the airport, Tourloukis testified in general terms that the Port Authority determines which livery companies are permitted to service airport travelers. Officer Tourloukis did not recall whether or not he ever attempted to ascertain which limousine company employed defendant.
In addition to Officer Tourloukis’s testimony, the People also introduced into evidence a copy of the “Airport Rules and Regulations” issued by the Port Authority of New York and New Jersey (People’s exhibit 4). Those regulations were admitted into evidence and were relevant to the extent that they addressed whether defendant was authorized to solicit ground transportation at JFK Airport on the day in question. However, the regulations are really an operational manual and concern a host of airport operation concerns, few of which relate to the issue of the solicitation of ground transportation.
Three memoranda attached to the Port Authority Regulations (part of People’s exhibit 4) specifically refer to authorized ground transportation companies. The first memorandum, “revised dated March 1, 2000,” is a list of 12 companies that are designated “airline crew permittees.” This memorandum does not indicate that it is an all-inclusive list, and in any event refers to “airline crew permittees” rather than the general public.
The second memorandum, dated April 25, 2000, is designated as a list of “ground transportation permittees.” Twelve livery companies are named in this list, and each company’s individual contract with the Port Authority is referenced, along with a very brief description of the type of service each provides. Again, however, this memorandum does not purport to be an exhaustive list of permittees, nor does it establish that defendant was not employed by an authorized provider three weeks earlier, on the relevant date of April 3, 2000.
The final reference to authorized permittees is a Port Authority “buckslip” dated May 16, 2000, in which the author informs all “UTBs Duty Supervisors” that a new company has been added to the list of permitted ground transportation companies. This memorandum sheds no particular light on defendant’s status, but it does underscore that authorized ground transportation companies change with unknown frequency. Conse *175 quently, to be relevant proof for the People’s case-in-chief, evidence proving that defendant was not employed by an authorized provider must refer to the particular date at issue.
In view of all of the foregoing, the evidence presented by the People at this trial, viewed in a light most favorable to them, was not legally sufficient as to the first exception: that defendant was not authorized to solicit ground transportation at JFK Airport on the day in question. (CPL 70.10.) That is so even though the People presented legally sufficient evidence with respect to the second exception: that defendant, if shown to have been an unauthorized provider, was offering ground transportation to apparent strangers in full view of Officer Tourloukis. Consequently, because the People’s proof failed with respect to the first exception, defendant’s motion for a trial order of dismissal must be granted.