OPINION OF THE COURT
Donald J. Mark, J.
The defendant was charged with two counts of attempted aggravated assault on a police officer involving two police officers, two counts of reckless endangerment involving the same two police officers, and one count of reckless endangerment involving an 11-year-old girl.
The incident began when a bicycle police officer attempted to stop the defendant’s motor vehicle after witnessing a suspected drug transaction. The defendant, instead of stopping, drove his *525 vehicle at the officer who was able to avoid being struck, but his bicycle was run over. Thereafter, other police officers in their vehicles in response to the officer’s radio call pursued the defendant’s vehicle through the city in a high speed chase. During the pursuit the defendant drove his vehicle onto a sidewalk, endangering the young girl. The defendant thereafter traversed a spike strip erected by a state trooper which deflated his tires, but he continued to drive. The defendant then drove his vehicle into a yard and then out of a driveway, nearly striking a police officer on foot in the driveway. The defendant’s vehicle stopped when shots were fired at it by police officers, which shots resulted in injury to the defendant and a minor injury to his girlfriend passenger.
The defendant’s counsel in his opening statement claimed that the defendant had the right to refuse to stop for the bicycle police officer because the latter lacked probable cause, probably relying upon the cases of People v Spencer (84 NY2d 749, cert denied 516 US 905) and People v Hoffman (283 AD2d 928, lv denied 96 NY2d 919).[1] The prosecutor objected that this was a question of law outside of the province of the jury (see People v Hamlin, 71 NY2d 750, 761-762; People v Conklin, 145 AD2d 20, 25, lv denied 74 NY2d 738), but this objection was overruled. The reasoning was that the defendant’s state of mind might negative the required intent for the charge of aggravated assault on the first police officer (see People v Finger, 266 AD2d 561, affd 95 NY2d 894; People v Boyd, 256 AD2d 350; People v Leonardo, 89 AD2d 214, affd 60 NY2d 683). At this juncture the statement was appropriate (see People v Valentin, 211 AD2d 509, lv denied 85 NY2d 944), and depending upon the proof at trial, any misconception could be corrected in the final charge to the jury (see People v Vinogradov, 294 AD2d 708, 709-710; People v Levy, 202 AD2d 242, 245).
At the trial there was detailed cross-examination by the defense concerning general order 530 and its numerous violations by the police in their pursuit of the defendant’s vehicle, viz., the defendant had not committed a crime which authorized pursuit (II C); no supervisor had assumed command of the pursuit (III B 4 [b]); more than two police vehicles pursued the defendant’s vehicle (III B 6 [b] [1]); the police attempted to overtake the defendant’s vehicle (III B 6 [d]); road blocking and *526 a boxing-in stop of the defendant’s vehicle was attempted (III B 6 [f] [1]); a supervisor did not authorize the use of the spike strip during the pursuit (III B 6 [fj [2]); and nothing in the general order authorized shots being fired at the defendant’s vehicle.[2]
The violation of general order 530 was the subject of extensive cross-examination as well as redirect examination[3] of multiple police officers before the defense offered the document into evidence. The objection of the prosecutor was overruled and the document was admitted (People v Beckwith, 289 AD2d 956, 957 [error for court to allow medical expert to testify concerning a study not introduced into evidence]; People v Walston, 99 AD2d 847, 848 [improper to impeach defendant by reading from document not in evidence]; People v Ramirez, 188 Misc 2d 170, 174 [defendant was accused of violating Vehicle and Traffic Law § 1220-b (1), and People introduced into evidence a copy of “Airport Rules and Regulations” issued by Port Authority of New York and New Jersey in attempt to prove violation]; see People v Bacon, 133 Misc 2d 771, 773 [defendant charged with zoning violation for operating a day-care center introduced into evidence a copy of a pamphlet entitled “Family Day Care Regulations and Guidelines”]; Criscione v City of New York, 97 NY2d 152 [“Radio Code Signal Card” of police department introduced where disputed issue concerned whether police officer was responding to an emergency or non-emergency call]).
An analogy may be drawn between the violation of general orders by the police and the nonconstitutional violation of a statute by the police, which will not necessarily result in the suppression of incriminating evidence (People v Patterson, 78 NY2d 711, 714 [use of a defendant’s photograph not sealed in violation of CPL 160.50 in an identification procedure does not result in suppression of in-court identification]; People v Sampson, 73 NY2d 908, 909 [New York police in Vermont detained the defendant in violation of CPL 140.10 and applicable Vermont statute, but resulting confession was valid]; People v Torres, 291 AD2d 273, lv denied 98 NY2d 681 [same as Patterson]; People v Lifrieri, 157 Misc 2d 598, 603, affd 230 AD2d 754, lv denied 89 NY2d 865 [police used confidential communication in violation of CPLR 4502 to obtain incriminating *527 evidence against the defendant, but suppression was not warranted]).
Thus, if a statutory violation would not result in the suppression of evidence, it follows that a violation of general orders in this case would not provide a defense to the charged crimes.
However, the violation of police general orders may subject a police officer to possible impeachment, and the decisions in the area of the impeachment of police officers have so intimated (People v Gissendanner, 48 NY2d 543, 549 [a witness’ disciplinary record may provide a motive to falsify]; People v Puglisi, 44 NY2d 748, 750 [information from detective’s disciplinary files as to his previous mishandling of undercover “buys” should have been disclosed for impeachment purposes]; People v Vasquez, 49 AD2d 590, 591 [detective had been convicted in Federal District Court of shaking down narcotics dealers and detective’s credibility was key issue at trial]; People v Oglesby, 177 Misc 2d 580, 588 [Civilian Complaint Review Board files might disclose prior assaults on suspects to coerce confessions]; People v Shakur, 169 Misc 2d 961, 974 [officer’s misconduct in wrongfully brandishing a weapon as he drove by two civilians three years before defendant’s trial did not have bearing on officer’s credibility as the act was impulsive and remote]).
As a consequence of these concepts and the proof at trial, the jury was instructed that the police conduct involving the stop and arrest of this defendant in contravention of their general orders presented legal issues to be resolved in another forum and was not a defense to the charges, but that the jury should consider the violation of general orders by the police as it affected the credibility of police witnesses.

. These cases actually require only reasonable suspicion to stop a moving vehicle; the application for a hearing by defendant’s previous attorney was denied because of insufficient allegations (People v Mendoza, 82 NY2d 415; People v Sanchez, 289 AD2d 266, lv denied 97 NY2d 733).

. This situation was governed by Penal Law § 35.30 (1) (c).

. The prosecutor attempted to show that the general orders permitted discretion in some areas (see Desmond v City of New York, 88 NY2d 455, 464, rearg denied 89 NY2d 861).